[No. E011576. Fourth Dist., Div. Two. Feb. 23, 1995.]

CAROL LORANE BRYANT et al., Plaintiffs and Appellants, v.
BRENDA GLASTETTER, Defendant and Respondent.

COUNSEL

Peter R. Cabrera for Plaintiffs and Appellants.

Kinkle, Rodiger & Spriggs and Claudia L. Reynolds for Defendant and Respondent.

OPINION

**RAMIREZ, P. J.**—The surviving wife and children of decedent Lester Bryant appeal from an order dismissing their wrongful death action against defendant Brenda Glastetter after the trial court sustained Glastetter's demurrer without leave to amend. Decedent was a tow truck driver who was struck and killed by a third party as he attempted to remove Glastetter's car from the side of the freeway. We affirm.

*Facts*

As they relate to the present appeal the facts of the case are not in dispute. In their complaint plaintiffs alleged that on March 9, 1991, defendant Brenda Glastetter was seen by two officers of the California Highway Patrol to be weaving in and out of traffic. The officers followed Glastetter for about five miles then effected a traffic stop on the narrow right shoulder of Interstate 215 as it runs through the City of Riverside. The officers conducted a series of field sobriety tests and placed Glastetter under arrest for driving under the influence of alcohol. The officers then called upon decedent to tow away Glastetter's vehicle.

Decedent arrived at the scene and was working to remove Glastetter's vehicle when he was struck and killed by a vehicle driven by Philip David Horn.

Plaintiffs, who are the surviving wife and children of decedent, filed a wrongful death action on November 20, 1991, against Philip David Horn; the two officers who had stopped Glastetter; the California Highway Patrol; the State of California; the California Department of Transportation; and Glastetter. Only defendant Glastetter is a party to this appeal.

The complaint alleged that Glastetter had a duty to avoid driving under the influence of alcohol; that she knew or should have known that driving under the influence of alcohol could lead to her arrest and impoundment of her vehicle, thereby affecting the safety of others including decedent at the scene of the traffic stop; and that the failure of Glastetter to avoid driving under the influence of alcohol was a proximate cause of the fatal injuries to decedent and the consequent harm to plaintiffs.

Glastetter filed a demurrer, arguing that she owed no duty to decedent as she was not involved in the accident that killed him and that all she had done was to place decedent in the customary position of risk created by the business of removing vehicles from the side of the road.

Glastetter further argued that as a matter of law her intoxication was not a proximate cause of decedent's death. In making that argument Glastetter relied on the decision in *Schrimscher* v. *Bryson* (1976) 58 Cal.App.3d 660 [130 Cal.Rptr. 125], in which negligent driving by a second intoxicated driver, who injured plaintiff police officer as he investigated an accident, was held to be an intervening cause which relieved the original intoxicated driver of liability for the officer's injuries. (*Id.,* at p. 664.)

Plaintiffs opposed the demurrer, citing the "rescuer" doctrine under which a person whose negligence creates a peril which necessitates a rescue is liable to those who are injured in the course of reasonable efforts to accomplish the rescue. Plaintiffs argued that decedent and Glastetter had such a relationship. Plaintiffs also cited "long established precedent" to argue that where an intervening act is reasonably foreseeable, the chain of causation is not broken and the original actor remains liable.

Following a brief hearing the trial court sustained the demurrer and granted plaintiffs 20 days to amend their complaint. In its order the court stated: "[T]he complaint fails to state a cause of action since no causation by this defendant has been pled; the existence of an independent intervening cause is clear on the face of the complaint."

Plaintiffs filed an amended complaint in which they alleged that Glastetter knew or should have known that driving under the influence of alcohol

would necessitate the rescue of her person and her vehicle and that those who undertook the rescue foreseeably could be injured, and that "[b]y failing to avoid driving under the influence of alcohol, Defendant GLASTETTER . . . was a proximate cause of the fatal injuries to the decedent. . . ."

Glastetter again demurred and again argued that there was no special relationship between herself and decedent that would give rise to a special duty to act; and that the negligence of the driver who struck decedent was an intervening cause which relieved Glastetter of liability. Glastetter also contended that "decedent knew of the potential danger encountered by being a tow truck driver and voluntarily accepted this risk," and that under the doctrine of implied assumption of the risk Glastetter should not be held liable to plaintiffs. Glastetter argued that "decedent's very occupation exposed him to these particular risks of harm" and that plaintiffs could not therefore complain of Glastetter's negligence in creating the situation in which decedent's services were required.

Plaintiffs opposed the motion, arguing that decedent was a foreseeable rescuer to whom Glastetter was liable, and arguing also that assumption of the sort of risk faced by decedent was not truly voluntary because decedent depended upon his job as a tow truck operator to support his family and therefore was not free to refuse employment which carried with it a particular risk. Plaintiffs then argued that Glastetter's negligence was the proximate cause of the harm to plaintiffs as a matter of law, or at the very least the question of whether Glastetter's negligence caused decedent's death should be decided by a jury.

A brief hearing was held, after which the court made the following order: "The demurrer by defendant Glastetter to plaintiff[s'] first amended complaint is **sustained** without leave to amend on the basis that no actionable duty on the part of Glastetter has been alleged." (Boldface in original.) An order dismissing the action was entered and plaintiffs have appealed.

### Issues on Appeal

On appeal plaintiffs make four arguments in an attempt to persuade this court that the trial court erred in sustaining the demurrer as to defendant Glastetter. Plaintiffs argue: (1) Glastetter owed a duty of due care to decedent to avoid driving while under the influence of alcohol; (2) Glastetter owed a duty of due care to decedent by virtue of the rescuer's doctrine; (3) Glastetter was the legal and proximate cause of decedent's injuries; and (4) the issue of whether or not the negligence of Glastetter proximately caused decedent's injuries should be decided by a jury.

We conclude that under the facts before us Glastetter owed no duty to decedent to avoid the harm suffered by him and we therefore affirm dismissal of the complaint as to defendant Glastetter.

## *Discussion*

### I. *Standard of Review*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. . . .' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Aubry* v. *Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

Only if we find as a matter of law that plaintiffs would be unable to state a cause of action against Glastetter should we affirm the judgment entered against plaintiffs.

### II. *Negligence*

In their complaint plaintiffs alleged negligence on the part of Glastetter. "An action in negligence requires a showing that the defendant owed the plaintiff a legal duty, that the defendant breached the duty, and that the breach was a proximate or legal cause of injuries suffered by the plaintiff. [Citations.]" (*Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673 [25 Cal.Rptr.2d 137, 863 P.2d 207].)

In their brief on appeal plaintiffs argue that the trial court erred in finding as a matter of law that the complaint did not allege a duty owed by defendant to decedent. They further contend that their complaint has made a sufficient allegation of causation, or at the very least that the issue of causation should be presented to a jury. We have resolved this case on the question of duty owed by Glastetter to decedent, and we therefore need not reach the remaining issues.

## III. *Duty*

██ "The general rule in California is that all persons have a duty ' "to use ordinary care to prevent others being injured as a result of their conduct." [Citations.]' (*Rowland* v. *Christian* [1968] 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; Civ. Code, § 1714; see *Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 572, fn. 6 . . . .)

"As explained by the California Supreme Court, ' "duty" is not an immutable fact of nature " 'but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' " ' (*Ballard* v. *Uribe, supra,* 41 Cal.3d at p. 572, fn. 6, citations omitted.) Whether a duty of care exists 'is a question of law to be determined on a case-by-case basis.' (*Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112 124. . . .)" (*Brunelle* v. *Signore* (1989) 215 Cal.App.3d 122, 128 [263 Cal.Rptr. 415].)

"Some factors that courts consider in determining the existence and scope of a duty in a particular case are: '[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' (*Rowland* v. *Christian, supra,* 69 Cal.2d at p. 113.)" (*Ann M.* v. *Pacific Plaza Shopping Center, supra,* 6 Cal.4th 666, 675, fn. 5.) ██ Under an analysis of these factors we conclude in the present case that Glastetter owed no duty to decedent to prevent the harm suffered by him.

### A. *Foreseeability of Harm*

██ "In order to limit the otherwise potentially infinite liability which would follow every negligent act, the law of torts holds defendant amenable only for injuries to others which to defendant at the time were reasonably foreseeable.

"In the absence of 'overriding policy considerations . . . foreseeability of risk [is] of . . . primary importance in establishing the element of duty.' [Citations.] As a classic opinion states: 'The risk reasonably to be perceived defines the duty to be obeyed.' (*Palsgraf* v. *Long Island R.R. Co.* (1928) 248 N.Y. 339, 344 [162 N.E. 99, 59 A.L.R. 253].) . . .

"Harper and James state the prevailing view. The obligation turns on whether 'the offending conduct foreseeably involved unreasonably great risk of harm to the interests of someone other than the actor. . . . [T]he obligation to refrain from . . . particular conduct is owed only to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous. Duty, in other words, is measured by the scope of the risk which negligent conduct foreseeably entails.' (2 Harper & James, The Law of Torts [(1956) § 16.15] at p. 1018, fns. omitted.)" (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 739 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].)

▬ It cannot be disputed that Glastetter owed a duty to decedent not to drive under the influence of alcohol, the same duty she owed to everyone else who might have been in a position to be injured by her negligence. ▬ "The general duty owed by a driver of a motor vehicle is explained in comment e to the Restatement Second of Torts, section 281, page 6, as follows: '[T]he duty to exercise reasonable care in driving an automobile down the highway is established for the protection of the persons or property of others against all of the unreasonable possibilities of harm which may be expected to result from collisions with other vehicles, or with pedestrians, or from the driver's own automobile leaving the highway, or from narrowly averted collisions or other accidents. When harm of a kind normally to be expected as a consequence of the negligent driving results from the realization of any one of these hazards, it is within the scope of the defendant's duty of protection.'" (*George A. Hormel & Co.* v. *Maez* (1979) 92 Cal.App.3d 963, 966- 967 [155 Cal.Rptr. 337, 15 A.L.R.4th 1141].)

▬ The harm suffered by decedent in the present case, however, was not a "harm of a kind normally to be expected" as a consequence of negligent driving, such as a collision or narrowly averted collision involving Glastetter. Nevertheless, citing *Taylor* v. *Superior Court* (1979) 24 Cal.3d 890 [157 Cal.Rptr. 693, 598 P.2d 854], plaintiffs contend that the public policy against driving while intoxicated and the presumption of negligence which attaches to an intoxicated driver would compel a finding here that Glastetter owed a duty to those individuals who might foreseeably be placed at risk as a consequence of her inebriated conduct when she was stopped and arrested on the highway.

We agree that Glastetter's consumption of alcohol increased the likelihood that she would cause injury by driving in a negligent manner. Even without being intoxicated, however, Glastetter might well have ended up by the side of the road and in need of a tow truck for any number of reasons which

might have involved varying degrees of negligence. Other than making it more probable that decedent would be in the place in which the accident happened, Glastetter's consumption of alcohol did not make more probable the accident that occurred, which was the result of independent negligence by a third party. ■ "The foreseeability of a particular kind of harm plays a very significant role in this calculus . . . , but a court's task—in determining 'duty'—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." (*Ballard* v. *Uribe* (1986) 41 Cal.3d 654, 572, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624], italics in original.) ■ Thus, while Glastetter might have foreseen that her consumption of alcohol would result in her being stopped by the side of the road, as a matter of policy we decline to hold that Glastetter should have foreseen that her consumption of alcohol would result in the harm actually suffered by decedent.

The California Supreme Court has stated that swift traffic and intoxicated drivers are to be expected on a major thoroughfare late at night and that "it is not uncommon for speeding and/or intoxicated drivers to lose control of their cars and crash into poles, buildings or whatever else may be standing alongside the road they travel . . . ." (*Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 58 [192 Cal.Rptr. 857, 665 P.2d 947].) However, those observations were made in the context of concluding that a jury might find it reasonably foreseeable that a speeding car might drive off the road into a telephone booth which had been the site of a previous accident. In that case the court was being asked to rule, as a matter of law, that the telephone company was not negligent in placing the telephone booth at that location, and it declined to do so.

Here, by contrast, the issue is whether the duty owed by Glastetter not to drive under the influence of alcohol extended beyond the specific known risks she created by placing herself on the road and included the risk of other harm which followed from her original negligence. We do not believe that the "category of negligent conduct" at issue in the present case—i.e., Glastetter's driving under the influence of alcohol—was "sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." (*Ballard* v. *Uribe, supra*, 41 Cal.3d at p. 572, fn. 6.) Thus, in our opinion this major consideration does not argue in favor of the finding of a duty owed by Glastetter to decedent.

### B. *Closeness of the Connection Between Glastetter's Conduct and Decedent's Injury*

■ Related to the question of foreseeability is the question of "the closeness of the connection between the defendant's conduct and the injury suffered." (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) .

"[T]he considerations that determine whether a defendant was negligent with respect to a plaintiff define the limits of his responsibility. 'Almost invariably these cases present no issue of causation in fact, since the defendant has created a situation acted upon by another force to bring about the result. . . . The question is one of negligence and the extent of the obligation: whether the defendant's responsibility extends to such interventions, which are foreign to the risk he has created. It might be stated as a problem of duty to protect the plaintiff against such an intervening cause. . . .' [Citations.]" (*Mosley* v. *Arden Farms Co.* (1945) 26 Cal.2d 213, 221 [157 P.2d 372, 158 A.L.R. 872] (conc. opn. of Traynor, J.).)

In *Schrimscher* v. *Bryson*, *supra*, 58 Cal.App.3d 660, plaintiff was a California Highway Patrol officer investigating an accident involving defendant at the side of the 405 freeway. Defendant was intoxicated and had caused the initial accident by his negligence. Plaintiff was severely injured when a second intoxicated driver struck defendant's empty car and knocked the car into plaintiff. The trial court granted defendant's motion for summary judgment and the appellate court affirmed, concluding that "under the undisputed facts here there can be no reasonable difference of opinion as to the foreseeability of the intervening act. The action of [the second intoxicated driver] could not reasonably have been anticipated by defendant at the time of his initial negligence and as a matter of law the chain of causation was broken." (*Id.*, at p. 664.)[1] Although that decision spoke in terms of causation rather than duty it addressed the same considerations we have before us in examining the closeness of the connection between Glastetter's negligence and the injury suffered.[2]

---

[1]As an alternate rationale the court stated that "It would be an unwarranted extension of liability" to allow a police officer investigating an accident or performing other duties to recover from the original traffic violator for injury resulting from the negligence or criminal conduct of another. (*Schrimscher* v. *Bryson*, *supra*, 58 Cal.App.3d at p. 665.) That doctrine has subsequently gained currency as an extension of the firefighter's rule. (See, e.g., *Holland* v. *Crumb* (1994) 26 Cal.App.4th 1844 [32 Cal.Rptr.2d 366].)

[2]The decision in *Schrimscher* v. *Bryson*, *supra*, highlights the fact that the foreseeability of the harm and the closeness of the connection between the negligence and the harm are two

■ Glastetter's negligence consisted of driving under the influence of alcohol. As we have discussed, there is no logical cause and effect relationship between that negligence and the harm suffered by decedent except for the fact that it placed decedent in a position to be acted upon by the negligent third party. Here, Glastetter was not even directly responsible for having brought decedent to the place where he was injured since he had been contacted by the police officers. We decline to hold that an intoxicated driver is, as a matter of policy, liable for all subsequent harm regardless of intervening acts by third parties, and we conclude that this factor also militates against a finding of duty owed by Glastetter toward decedent in the present case.

## C. *Consequences to the Community of Imposing a Duty*

■ The remaining factor of major significance in evaluating whether there is a duty owed by defendant to plaintiff in a given situation is "the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach . . . ." (*Rowland* v. *Christian*, *supra*, 69 Cal.2d at p. 113.)

■ It is clear that Glastetter owed a duty to decedent, and to all others as well, not to drive under the influence of alcohol. Glastetter owed no duty to decedent, however, to avoid situations in which she might need his services. If we decide here that Glastetter's initial negligence expands her liability beyond its usual scope to include harm resulting from the fact that Glastetter needed decedent's services, we will be establishing a rule which requires that a court examine the culpability of a defendant in needing the help of a tow truck in order to determine whether there is liability for subsequent harm to the driver. Thus, for example, if Glastetter had suffered a mechanical breakdown or had run out of gas we would have to look at whether and to what extent she had been negligent in creating the initial problem before we could evaluate the extent of her liability.

As a matter of policy we do not think it is wise to create an incentive for drivers whose cars are disabled to attempt self-help solutions rather than to call for assistance. Even if those drivers were negligent in having created the initial problem, they should be encouraged to seek help in resolving it in the interest of the safety of all drivers. Thus, although society has a great interest in discouraging driving under the influence of alcohol, there is the countervailing interest in encouraging drivers to obtain the help they need. We find

---

sides of the same coin: "The general test of whether an independent intervening act, which operates to produce an injury, breaks the chain of causation is the foreseeability of that act. [Citation.]" (58 Cal.App.3d at p. 664.)

that latter interest would be best served by finding no duty in the present case.

We have concluded that under the circumstances presented here Glastetter had no duty to protect decedent from the possibility of injury resulting from the negligence of another driver, and we hold that the trial court correctly sustained Glastetter's demurrer without leave to amend.

IV. *Firefighter's Rule*

A recent opinion which presented facts remarkably similar to those now before us reached the conclusion we reach only under a different theory. (*Holland* v. *Crumb, supra,* 26 Cal.App.4th 1844.) In that case the court held that a privately employed tow truck driver who was struck by a third party and injured as he attempted to hook up the car of one of the defendants at the scene of an accident was barred from recovery by the "firefighter's rule." The court concluded that the firefighter's rule precluded recovery by the tow truck driver "because the risk of being hit from passing traffic is inherent in the performance of the normal and usual duties of a tow truck driver rendering aid to inoperable cars which may be stranded on freeways or streets." (*Id.,* at p. 1852.)

The California Supreme Court subsequently issued its decision in *Neighbarger* v. *Irwin Industries, Inc.* (1994) 8 Cal.4th 532 [34 Cal.Rptr.2d 630, 882 P.2d 347], in which the court limited the scope of the firefighter's rule in a decision which permitted private safety employees to proceed in an action against a third party for injuries caused by the third party's negligence in starting a fire. The court there stated: "The firefighter's rule . . . is hedged about with exceptions. The firefighter does not assume every risk of his or her occupation. [Citation.] The rule does not apply to conduct other than that which necessitated the summoning of the firefighter or police officer, and it does not apply to independent acts of misconduct that are committed after the firefighter or police officer has arrived on the scene. [Citations.]" (*Id.,* at p. 538.) Following an analysis of the policies behind the rule the court concluded that "The most substantial justifications for the firefighter's rule are those based on the public nature of the service provided by firefighters and the relationship between the public and the public firefighter," and the court then declined to apply the rule to the privately employed safety workers before it. (*Id.,* at p. 546.)

The court went on to "reject the reasoning of the court in *Holland* v. *Crumb* (1994) 26 Cal.App.4th 1844. . . , applying the firefighter's rule to

the claim of a privately employed tow truck driver on the theory that a tow truck driver must assume the foreseeable risks of such hazardous employment. . . . As we have explained above, *Knight* [v. *Jewett* (1992)] 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696], requires a closer analysis, focusing not on the foreseeability of the hazard or the plaintiff's subjective awareness of risk, but on the defendant's duty of care and the relationship of the parties." (*Neighbarger* v. *Irwin Industries, Inc., supra*, 8 Cal.4th at p. 545, fn. 4.) Thus, in this case, we decline to follow the reasoning of *Holland* v. *Crumb, supra*, 26 Cal.App.4th 1844, although we believe that decision arrived at the correct result.

## V. *Rescue Doctrine*

Plaintiffs have also argued that they should be permitted to recover from Glastetter under the "rescue doctrine" addressed in *Solgaard* v. *Guy F. Atkinson Co.* (1971) 6 Cal.3d 361 [99 Cal.Rptr. 29, 491 P.2d 821]. In that case plaintiff was a doctor who had agreed to provide emergency medical care to employees injured during the construction of a dam. At one point plaintiff himself was injured as he attempted to reach and treat injured employees.

Plaintiff brought suit and recovered for his injuries. In affirming the jury award the appellate court noted that "It is not . . . a doctor's business to cope with steep, slippery embankments. Plaintiff agreed only to furnish medical aid to injured employees; he did not further agree to expose himself to risks and hazards not necessarily inherent in the performance of his services." (*Solgaard* v. *Guy F. Atkinson Co., supra*, 6 Cal.3d at p. 369.)

Here decedent was not rescuing Glastetter; he was performing the job he had been hired to do. "The rescue doctrine contemplates a voluntary act by one who, in an emergency and prompted by spontaneous human motive to save human life, attempts a rescue that he had no duty to attempt by virtue of a legal obligation or duty fastened on him by his employment." (57A Am.Jur.2d, Negligence, § 696, p. 637, fn. omitted.) Decedent here had undertaken a contractual obligation to Glastetter to remove her car from the freeway and he did not qualify as a rescuer for purposes of the special rules of liability that apply in those cases.

## VI. *Causation*

As we have stated, we have resolved this case on the issue of the duty owed by Glastetter to decedent and we therefore need not consider the causation issues raised by plaintiffs in this appeal.

## *Disposition*

The order dismissing plaintiffs' action as to defendant Glastetter is affirmed. Costs on appeal to be borne by appellants.

McKinster, J., and McDaniel, J.,* concurred.

Appellants' petition for review by the Supreme Court was denied June 22, 1995.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, senior judge status (Gov. Code, § 75028.1), sitting under assignment by the Chairperson of the Judicial Council.