Even if Bonanno can inform the duty question here, our discussion of Seaber and Schwartz in that case makes clear that the key consideration in Bonanno -the mobile nature of the bus stop-is not present in this case. We explained that the bus stop in Bonanno easily could have been moved to a less dangerous location, an option not available to the hotel in Seaber .
*1094 ( Bonanno , supra , 30 Cal.4th at p. 152, 132 Cal.Rptr.2d 341, 65 P.3d 807.) We found that the bus stop was more like the bakery truck belonging to the defendant street vendor in Schwartz , who owed a duty to a child patron injured while crossing the street to reach the truck. Because the vendor could choose where it did business, we reasoned, it could choose the avenues of approach to the truck. (See Schwartz , supra , 67 Cal.2d at pp. 242-243 & fn. 10, 60 Cal.Rptr. 510, 430 P.2d 68.) In this regard, the bus stop in Bonanno was also like the phone booth at issue in Bigbee , where we said in dicta that a telephone company likely owed a duty to patrons to exercise reasonable care in deciding where to place its phone booths on a public street. ( Bigbee , supra , 34 Cal.3d at p. 55, fn. 8, 192 Cal.Rptr. 857, 665 P.2d 947.) But we did not examine the point in any depth; the primary question in Bigbee was whether the plaintiff's injuries in that case were unforeseeable as a matter of law. ( Id . at p. 56, 192 Cal.Rptr. 857, 665 P.2d 947.)
Vasilenko argues that Bonanno , Schwartz , and Bigbee are applicable because the Church could effectively "move" the swim school lot by directing invitees to the business plaza lot. But that is not how we understood the mobility of the bus stop in Bonanno , the bakery truck in Schwartz , or the phone booth in Bigbee . The bus stop, bakery truck, and phone booth could have been relocated to any number of unequivocally safer locations with little burden on the defendant. (See Bonanno , supra , 30 Cal.4th at p. 152, 132 Cal.Rptr.2d 341, 65 P.3d 807 [moving the bus stop one block to a location next to a controlled crosswalk "imposed no undue burden" on the public agency]; Schwartz , supra , 67 Cal.2d at p. 243, 60 Cal.Rptr. 510, 430 P.2d 68 [the bakery truck could have legally parked on the other side of the street, where the plaintiff came from]; Noon v. Knavel (1975) 234 Pa.Super. 198, 339 A.2d 545, 550-551 [phone booths can be moved to other, safer locations], cited in Bigbee , supra , 34 Cal.3d at p. 59, 192 Cal.Rptr. 857, 665 P.2d 947.) Because the defendants could readily control which parts of the public streets were adjacent to their premises, we found they had a duty to exercise reasonable care in exercising that control. (See Seaber , supra , 1 Cal.App.4th at pp. 489-490, 2 Cal.Rptr.2d 405 [discussing the "elastic concept of business premises" of mobile street vendors].) Parking lots, by contrast, cannot be moved so easily, and the burden of identifying alternatives and assessing the multitude of variables affecting their relative safety is not insubstantial.
*859 Bonanno , Schwartz , and Bigbee are thus distinguishable from cases involving premises with fixed locations and landowners with no **1207 control over the relevant part of the public street.
D.
The parties have cited cases from other jurisdictions that have considered the issue before us, and we find that our holding is consistent with the weight of those authorities. In Davis v. Westwood Group (1995) 420 Mass. 739, 652 N.E.2d 567 ( Davis ), for instance, the Supreme Judicial Court of Massachusetts held that the defendant racetrack had no duty to protect invitees crossing a public street between its parking lot and the racetrack. ( *1095 Id. at p. 570.) The court reasoned that imposing a duty would "significantly expand the scope of a landowner or possessor's duties with respect to adjacent public roads, and would make the line which cuts off landowner liability 'nearly impossible to draw.' [Citation.]" ( Id. at p. 570.) Courts in Illinois, North Carolina, and New York have similarly declined to impose a duty on landowners to protect or warn invitees when the configuration of the landowner's premises requires invitees to cross a public street. (See Swett v. Village of Algonquin (1988) 169 Ill.App.3d 78, 119 Ill.Dec. 838, 523 N.E.2d 594, 600-602 ; Laufenberg v. Golab (1982) 108 Ill.App.3d 133, 63 Ill.Dec. 875, 438 N.E.2d 1238, 1240-1241 ; Laumann v. Plakakis (1987) 84 N.C.App. 131, 351 S.E.2d 765, 766-767 ; Obiechina v. Colleges of the Seneca (N.Y.Sup.Ct. 1996) 171 Misc.2d 56, 60-62, 652 N.Y.S.2d 702.)
Vasilenko observes that some courts in other states have found a duty in somewhat similar circumstances, but we find many of the cases he cites distinguishable. In Lutheran Hosp. of Indiana v. Blaser (Ind.Ct.App. 1994) 634 N.E.2d 864, for instance, the defendant hospital was aware of the dangerous condition-the configuration of the hospital's parking lot made it appear as though the lot's driveway was the entrance when in fact it was the exit-and exercised control over the driveway, where the plaintiff's injuries occurred. ( Id. at pp. 869-870.) Stephens v. Bashas' Inc. (Ct.App. 1996) 186 Ariz. 427, 924 P.2d 117, for its part, involved a configuration of the defendant's premises that required drivers to stop in the middle of the street, walk around their trucks, open their doors, walk back around to the cab, then drive across the street in reverse to back into the premises. ( Id. at p. 119.) These circumstances differ from the situation here, which only involves crossing a public street.
Vasilenko also cites Donavan , supra , 658 So.2d 755, in which a Louisiana appellate court found that the landowner owed a duty to a construction worker who was struck by a truck while crossing a five-lane highway separating the landowner's construction site from its parking lot in the early morning. ( Id. at pp. 759-760, 766.) Although at the landowner's request the state had installed a crosswalk, reaching the crosswalk in the dark required "walking over [an] unfamiliar and hazardous ... unlit, pothole-filled parking lot" and then doubling back once across to reach the construction site entrance. ( Id. at p. 767.) To the extent that Donavan found a duty because the lighting conditions of the parking lot obscured the existence of the crosswalk and where the dangerous condition of the parking lot made it unattractive for invitees to reach the crosswalk, its holding is not inconsistent with the rule proposed here. But we are not persuaded by Donavan 's broader conclusion that the defendant owed the plaintiff a duty to provide "reasonably safe access" to the premises ( id . at p. 766 ), although the fact that the defendant in *1096 Donavan was the plaintiff's *860 employer may entail considerations not present here.
Finally, Vasilenko cites Warrington v. Bird (App.Div. 1985) 204 N.J.Super. 611, 499 A.2d 1026 ( Warrington ), but that case relies on law inconsistent with California's. Warrington found that the defendant restaurant "had the obligation to exercise reasonable care for the safety of its patrons in passing over the County highway from and to its parking lot," reasoning that "[c]ommercial entrepreneurs know in providing the parking facility that their customers will travel a definite route to reach their premises. The benefiting proprietor should not be permitted to cause or ignore an unsafe condition in that route which it might reasonably remedy, whether the path leads along a sidewalk or across a roadway." ( Id. at pp. 1029-1030.) The court noted that "[t]estimony ... that **1208 lighting placed upon the premises of the restaurant or parking lot might reasonably have illuminated the area and have made motorists more aware of pedestrians crossing the roadway to and from the restaurant and its parking lot. In addition, if the dangers reasonably required, a sign or flashing signal might have been erected on defendant's premises to alert both motorists and patrons of the dangers." ( Id. at p. 1030.)
In California, landowners may not place signs that seek to direct the flow of traffic on a public highway, even on their own property, nor may they install lights that distract passing motorists. ( Veh. Code, §§ 21465, 21466.5.) Warrington 's reference to dangers "along a sidewalk" also suggests that in New Jersey landowners are liable for dangers on public streets abutting their premises generally. ( Warrington , supra , 499 A.2d at p. 1030.) Indeed, the court in Mulraney v. Auletto's Catering (1996) 293 N.J.Super. 315, 680 A.2d 793 ( Mulraney ) relied on Warrington to hold that the defendant landowner had a duty to protect patrons crossing the street from a parking lot the landowner did not control. ( Mulraney , at p. 796.) This result is directly at odds with the holding in Seaber , supra , 1 Cal.App.4th 481, 2 Cal.Rptr.2d 405, which found no duty in analogous circumstances, and it is inconsistent with our general rule that "a landowner is under no duty to maintain in a safe condition a public street abutting upon" the landowner's property unless the landowner created the danger. ( Sexton , supra , 39 Cal.2d at p. 157, 245 P.2d 496.)
IV.
We now apply our holding to the circumstances here. The available evidence indicates that the section of Marconi Avenue at issue was a regular public street in a metropolitan area. Indeed, after conducting a traffic study, the county declined to install a crosswalk across Marconi Avenue near the Church. California Walks, supporting Vasilenko, observes that within unincorporated Sacramento County, Marconi Avenue had a relatively high number of *1097 pedestrian-vehicle collisions per mile between 1996 and 2001. But the data amici cite do not indicate that Marconi Avenue was particularly dangerous even by the standards of Sacramento County. Nor did the county identify the intersection of Marconi Avenue and Root Avenue as one with a high number of collisions during that time period.
Vasilenko also does not contend there were any dangerous conditions within the parking lot that magnified or obscured the danger posed by Marconi Avenue. He does not allege, for instance, that the swim school lot or the main Church premises were inadequately lit. Unlike in Barnes , there was nothing that caused Vasilenko to be "ejected" uncontrollably into the middle of Marconi *861 Avenue. (Barnes , supra , 71 Cal.App.4th at p. 1479, 84 Cal.Rptr.2d 634.) Nor does Vasilenko allege that the Church or its parking attendants represented to him that Marconi Avenue was safer than it actually was or safer than crossing at the intersection with Root Avenue. The record indicates that the street was lit only at the intersection, which was at most 100 feet away. Although Vasilenko claims he "required assistance and instruction" from the Church's parking attendants, he does not explain how such assistance or instruction would have served any purpose beyond warning him of the obvious danger of crossing Marconi Avenue midblock. Finally, Vasilenko does not allege that the Church's invitees routinely include unaccompanied persons who are incapable of appreciating the obvious danger of the public street; Vasilenko certainly does not claim to be such a person.
In sum, Vasilenko does not allege that the Church has done anything more than site and maintain a parking lot that requires its invitees to cross a public street. We thus conclude that the Church owed Vasilenko no duty to protect him from the obvious dangers of crossing Marconi Avenue.
V.
Vasilenko argues that the Court of Appeal's decision should be affirmed on the alternative ground that the Church voluntarily assumed a duty to assist him in crossing Marconi Avenue. This argument was not presented to the trial court, and although the parties briefed it before the Court of Appeal, that court found the Church owed Vasilenko a duty under Civil Code section 1714 and did **1209 not reach the alternative argument. We granted review only on the issue of a landowner's duty to its invitees when it directs those invitees to use its parking lot across the street. We decline to address whether the Church, by its alleged actions, voluntarily assumed a duty. The Court of Appeal on remand may consider this argument if Vasilenko elects to pursue it. *1098 CONCLUSION
We reverse the decision of the Court of Appeal and remand to that court for further proceedings consistent with this opinion.
We Concur:
Cantil-Sakauye, C. J.
Chin, J.
Corrigan, J.
Cuéllar, J.
Kruger, J.
Jones, J.*

Presiding Justice of the Court of Appeal, First Appellate District, Division Five, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution