Filed 2/8/18; Certified for Publication 3/1/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF
CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TRAVIS SAKAI,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MASSCO INVESTMENTS, LLC,<br><br>    Defendant and Respondent. | B279275<br><br>(Los Angeles County<br>Super. Ct. No. BC 561562) |

    APPEAL from a judgment of the Superior Court of Los
Angeles County, Maureen Duffy-Lewis. Affirmed.

    Law Office of Daniel M. O'Leary, Daniel M. O'Leary;
LippSmith Law and MaryBeth LippSmith for Plaintiff and
Appellant.

Horvitz & Levy, Lisa Perrochet, Eric S. Boostin; Law Office of Kevin Piekut and Kevin Piekut for Defendant and Respondent.

_____

Travis Sakai (Sakai) sued Massco Investments, LLC, (Massco) for negligence and premises liability after he was struck and then dragged by a vehicle exiting Massco's parking lot. The trial court granted summary judgment to Massco on the ground that there was "no foreseeability and no duty." On appeal, Sakai argues that the trial court erred because the accident was reasonably foreseeable. We disagree and, accordingly, affirm.

## BACKGROUND

### I.     The accident

Massco owned a Union 76 gas station in Los Angeles, which it leased to the owners of a taco truck from 4:00 p.m. to 3:00 a.m., Monday through Sunday. The busiest nights for the taco truck were Friday and Saturday. Although the lease did not expressly require the taco truck owners to provide security or parking lot attendants, Massco believed that an "outside security man" hired by the taco truck's owners would keep their customers' cars "organized on their part of the lot."

On Sunday, August 25, 2013, at approximately 2:00 a.m., Sakai, his wife (collectively with Sakai, Plaintiffs), and a friend drove into Massco's parking lot to get food from the taco truck. At that time, the parking lot was "crowded." Sakai pulled a couple of car lengths into the lot to try to

2

park.  Seeing no open spaces, and having no room to go further forward or to move left or right, Sakai backed up to exit the lot.  As he backed up, Sakai hit the front of another car, one owned by Ana Avalos but at the time driven by someone else (the driver of the Avalos vehicle) (the first accident).  While the first accident caused some property damage to Sakai's car, it did not cause Sakai any bodily injury.

Immediately after the first accident, Sakai and the driver of the Avalos vehicle exited their cars to inspect the damage.  The driver of the Avalos vehicle appeared to Sakai to be "pretty pissed off."  Sakai admitted to the other driver that the first accident was his fault and advised him that he had insurance.  Although Sakai repeatedly asked the driver of the Avalos vehicle to exchange insurance information, the other man did not comply with Sakai's requests.  Instead, the driver of the Avalos vehicle got back into his car and, without any warning, suddenly backed up into the street at a "high rate of speed," then drove away "real fast."  In so doing, the driver of the Avalos vehicle struck Sakai and dragged him into the street, causing serious bodily injury to Sakai (the second accident).

## II.   The proceedings below

On October 21, 2014, Plaintiffs sued Massco and others for premises liability, negligence, negligent infliction of emotional distress, and loss of consortium arising out of the second accident.  Plaintiffs claimed that Sakai's injuries were caused by "inadequate parking," the lack of "parking

attendants or security personnel to direct traffic," the "fail[ure] to designate a parking area for the taco stand," and unspecified other "fail[ures] to take adequate safety precautions."

In January 2016, Massco moved for summary judgment on the ground that Plaintiffs could not establish causation because (1) any alleged negligence was not the proximate cause of Sakai's injuries; and (2) the driver of the Avalos vehicle was a superseding cause of Sakai's injuries.

In June 2016, the court initially denied Massco's motion, but solicited further briefing on the issue of "duty based on foreseeability." In August 2016, after considering the parties' supplemental briefing, the trial court granted Massco's motion, finding that there was "no foreseeability and no duty." Sakai timely appealed.

## DISCUSSION

### I.    Standard of review

We review an order granting summary judgment de novo, "considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc*. (2000) 24 Cal.4th 317, 334 (*Guz*).)

A defendant moving for summary judgment must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).)  "In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation],

4

liberally construing [his or] her evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler v. Advanced Group* 400 (2001) 25 Cal.4th 763, 768.) We accept as true both the facts shown by the losing party's evidence and reasonable inferences from that evidence. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 856.)

Summary judgment is appropriate only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A triable issue of material fact exists if the evidence and inferences therefrom would allow a reasonable juror to find the underlying fact in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at pp. 850, 856.)

## II. Guiding principles regarding the duty of care

"An action in negligence requires a showing that the defendant owed the plaintiff a legal duty, that the defendant breached the duty, and that the breach was a proximate or legal cause of injuries suffered by the plaintiff." (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673 (*Ann M.*).)

"The determination of duty is primarily a question of law. [Citation.] It is the court's 'expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' [Citation.] . . . While the question whether one owes a duty

5

to another must be decided on a case-by-case basis, every case is governed by the rule of general application that all persons are required to use ordinary care to prevent others from being injured as the result of their conduct." (*Weirum v. RKO General, Inc.* (1975) 15 Cal.3d 40, 46, fn. omitted; *Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 770 (*Cabral*) [reaffirming duty is a legal question].)

The Civil Code codifies the general duty of care. "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself." (Civ. Code, § 1714, subd. (a).) "Civil Code section 1714, subdivision (a) 'establishes the general duty of each person to exercise, in his or her activities, reasonable care for the safety of others.' [Citation.] ' "Courts . . . invoke[ ] the concept of duty to limit generally 'the otherwise potentially infinite liability which would follow from every negligent act.' " ' " (*Vasilenko v. Grace Family Church* (2017) 3 Cal.5th 1077, 1083 (*Vasilenko*).) Our Supreme Court has said that "in the absence of a statutory provision establishing an exception to the general rule of Civil Code section 1714, courts should create one only where 'clearly supported by public policy.' " (*Cabral*, *supra*, 51 Cal.4th at p. 771.)

In determining whether policy considerations weigh in favor of such an exception, California courts balance the

6

following factors:  "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved" (the *Rowland* factors).  (*Rowland v. Christian* (1968) 69 Cal.2d 108, 113 (*Rowland*).)

An important feature of the duty analysis is that the *Rowland* factors are "evaluated at a relatively broad level of factual generality.  Thus, as to foreseeability, [our high court has] explained that the court's task in determining duty 'is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed.' " (*Cabral, supra*, 51 Cal.4th at p. 772; see *Vasilenko, supra*, 3 Cal.5th at p. 1084 ["Analysis of duty occurs at a higher level of generality" than the other elements].)

"The *Rowland* factors fall into two categories.  Three factors—foreseeability, certainty, and the connection between the plaintiff and the defendant—address the foreseeability of the relevan[t] injury, while the other four—

7

moral blame, preventing future harm, burden, and availability of insurance—take into account public policy concerns that might support excluding certain kinds of plaintiffs or injuries from relief." (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1145.)

## III. Massco did not owe a duty to Sakai

### A.    THE FORESEEABILITY OF SAKAI'S INJURY

As noted above, the first group of *Rowland* factors assess the foreseeability of the harm. (*Rowland, supra,* 69 Cal.2d at p. 113.) Here, the first two factors (general foreseeability and the degree of certainty of the injury) support a finding of duty. The general type of injury that Sakai suffered was foreseeable—that is, it is foreseeable that a customer of the food truck might be struck by a car exiting the parking lot in a imprudent manner. It is similarly certain that Sakai was in fact injured when he was struck by the Avalos vehicle exiting the lot and that his injury is compensable at law—that is, this is not a case where the " 'only claimed injury is an intangible harm.' " (*Vasilenko, supra,* 3 Cal.5th at p. 1085.)

However, the third factor, "the closeness of the connection between the defendant's conduct and the injury suffered" (*Rowland, supra,* 69 Cal.2d at p. 113), supports a finding of no duty. The third factor, although "strongly related to the question of foreseeability itself" (*Cabral, supra,* 51 Cal.4th at p. 779), "also accounts for third party or other intervening conduct. [Citation.] Where the third party's intervening conduct is foreseeable or derivative of the

defendant's, then that conduct does not ' "diminish the closeness of the connection between defendant['s] conduct and plaintiff's injury." ' " (*Vasilenko, supra*, 3 Cal.5th at p. 1086.)  "[W]hen an injury is the product of the intervening act of a third person, *the test is whether the particular manner in which the third person acted is one of the hazards that makes an actor negligent.*" (*Wawanesa Mutual Ins. Co. v. Matlock* (1997) 60 Cal.App.4th 583, 588, italics added.)

*Bryant v. Glastetter* (1995) 32 Cal.App.4th 770 (*Bryant*), is illustrative.  In that case, a tow truck driver working to remove a vehicle from the shoulder of a freeway was fatally struck by a passing vehicle.  His surviving wife and children sued the original driver of the vehicle he was removing, who had earlier been pulled over and arrested for drunken driving at that location.  (*Id*. at pp. 774–775.)  The Court of Appeal held the defendant (the drunken driver) owed no duty to the decedent to prevent the injury he suffered.  The defendant owed decedent, like anyone else potentially injured by her driving while intoxicated, a duty to refrain from doing so (*id*. at p. 779), but the connection between her negligence and the type of injury that resulted—an errant vehicle striking the tow truck driver called to remove her car from the freeway—was too indirect and attenuated, for "there is no logical cause and effect relationship between that negligence and the harm suffered by decedent except for the fact that it placed decedent in a position to be acted upon by the negligent third party."  (*Id*. at p. 782.)

In reaching its decision, the court in *Bryant*, *supra*, 32 Cal.App.4th 770 stressed the necessary limits of foreseeability by quoting at length from a decision by our Supreme Court, *Dillon v. Legg* (1968) 68 Cal.2d 728: " 'In order to limit the otherwise potentially infinite liability which would follow every negligent act, the law of torts holds defendant amenable only for injuries to others which to defendant at the time were reasonably foreseeable. [¶] . . . As a classic opinion states: "The risk reasonably to be perceived defines the duty to be obeyed." (*Palsgraf v. Long Island R.R. Co.* (1928) 248 N.Y. 339, 344 [162 N.E. 99, 59 A.L.R. 253 [1253]].) . . . [¶] . . . "[T]he obligation to refrain from . . . particular conduct is owed only to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous. Duty, in other words, is measured by the scope of the risk which negligent conduct foreseeably entails." ' " (*Bryant*, at pp. 778–779.)

Here, the conduct of the driver of the Avalos vehicle was not foreseeable or derivative of Massco's conduct in designing, leasing or operating the parking lot. In fact, neither Sakai nor his wife anticipated or expected the driver of the Avalos vehicle to suddenly reverse his car out of the crowded parking lot and into the street at high speed while still in the midst of dealing with the first accident (e.g., exchanging insurance information). Indeed, Sakai and his wife considered the conduct by the driver of the Avalos

10

vehicle to be "highly unusual" and to have taken them by "surprise."

Moreover, Sakai did not submit any evidence showing that in " ' "the setting of modern life . . . a reasonably thoughtful [person]" ' " would have reasonably anticipated the conduct by the driver of the Avalos vehicle.  (*Martinez v. Bank of America* (2000) 82 Cal.App.4th 883, 895.)  There was, for example, no evidence that at any time prior to the second accident Massco was on notice that either drivers routinely or regularly entered or exited the parking lot at high speed while the food truck was serving customers or that a pedestrian customer of the food truck was struck by a car transiting the parking lot at any speed.  (*Ibid.* ["the requisite degree of foreseeability rarely, if ever, can be proven in the absence of prior similar incidents"].)

*Sturgeon v. Curnutt* (1994) 29 Cal.App.4th 301 (*Sturgeon*), illustrates the importance that prior similar incidents can play in determining the existence of a duty.  In *Sturgeon*, the Curnutts rented a house to their son Thomas.  While under the influence of alcohol, Thomas waved a gun around; it went off and struck a visitor, Lisa Sturgeon.  (*Id.* at p. 303.)  Sturgeon sued the Curnutts, asserting a premises liability theory.  The trial court granted a nonsuit.  (*Id.* at p. 305.)  The Court of Appeal affirmed, holding:  "[T]he [Curnutts] did not owe a duty of care to [Sturgeon] because the injury was not foreseeable." (*Id.* at p. 303.)  "The evidence established the defendants knew Thomas had a problem with alcohol; he was convicted of driving under the

11

influence and attended a rehabilitation program. They also knew Thomas had firearms. What was missing . . . was any evidence these two factors created a dangerous condition for those entering the premises. Sturgeon offered no evidence Thomas ever harmed anyone due to either his problem with alcohol or his possession of firearms or that he handled firearms in an unsafe manner while drunk." (*Id*. at p. 307.) "[W]hile a logical possibility of harm attends the combination of firearms and alcohol, nothing put the defendants on notice a visitor might be injured. The presence of firearms, alone, also raises the logical possibility of harm to visitors, but it would be unreasonable to attach a duty simply because the landlord knew about the firearms. The defendant's additional knowledge of Thomas's drinking problem did little to increase the foreseeability of harm to visitors since there was no evidence he handled firearms while drinking." (*Id*. at p. 308.) "When there is no evidence a tenant has violent propensities or handles firearms unsafely while drinking, a landlord's knowledge that the tenant misuses alcohol and possesses firearms is not a cue the landlord needs to protect visitors from injury." (*Ibid*.)

Here, while Massco may have been on notice that its parking lot was or would be more crowded with cars and pedestrians when the food truck was in operation, there was no evidence that Massco was also on notice that at the same time cars were exiting (or entering or transiting) the parking lot at dangerous rates of speed and putting pedestrians in the lot at risk of serious injury.

In short, "a duty to take affirmative action to control the wrongful acts of a third party will be imposed only where such conduct can be reasonably anticipated."  (*Ann M.*, *supra*, 6 Cal.4th at p. 676.)  Here, the seemingly inexplicable conduct of the driver of the Avalos vehicle could not have been reasonably anticipated by Massco.  Indeed, there is no logical connection between Massco's alleged failure to more closely regulate/supervise the parking lot and the conduct that directly caused Sakai's injuries.  Massco's conduct in leasing the parking lot to the food truck bears, in other words, only an attenuated relationship to Sakai's injuries.

B.    PUBLIC POLICY CONSIDERATIONS

" '[F]oreseeability alone is not sufficient to create an independent tort duty.  " '[The] existence [of a duty] depends upon the foreseeability of the risk and a weighing of policy considerations for and against imposition of liability.' " ' [Citation.]  These policy considerations include ' " 'the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved" [citation].'  [Citation.]  'A duty of care will not be held to exist even as to foreseeable injuries . . . where the social utility of the activity concerned is so great, and avoidance of the injuries so burdensome to society, as to outweigh the compensatory and cost-internalization values

13

of negligence liability.' " (*Vasilenko, supra,* 3 Cal.5th at pp. 1086–1087.)

"Foreseeability and the extent of the burden to the defendant are ordinarily" considered to be the "crucial" public policy considerations. (*Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1213.) Accordingly, we will focus our policy analysis on that issue.[1] Sakai argues that in order to guard

---

[1]The other public policy considerations are either neutral due to a lack of evidence (e.g., availability of insurance) or weigh heavily in favor of a no duty finding (e.g., moral blame and preventing future harm.)

" 'To avoid redundancy with the other *Rowland* factors, the moral blame that attends ordinary negligence is generally not sufficient to tip the balance of the *Rowland* factors in favor of liability,' and courts require a higher degree of moral culpability such as where the defendant (1) intended or planned the harmful result, (2) had actual or constructive knowledge of the harmful consequences of their behavior, (3) acted in bad faith or with a reckless indifference to the results of their conduct, or (4) engaged in inherently harmful acts." (*Campbell v. Ford Motor Co.* (2012) 206 Cal.App.4th 15, 32.) Here, there is no evidence that Massco was morally culpable under this heightened standard.

"The overall policy of preventing future harm is ordinarily served, in tort law, by imposing the costs of negligent conduct upon those responsible." (*Cabral, supra,* 51 Cal.4th at p. 781.) In general, internalizing the cost of injuries caused by a particular behavior will induce changes in that behavior to make it safer. That consideration may be

14

against the "risk that a pedestrian would be hit by a car[,]" "businesses that rely on bringing in late-night crowds—that remain heavy after bars close—have a responsibility to protect patrons from impaired or distracted driving." As a result, Sakai argues on appeal that Massco should have instituted "parking controls," which could have "come in the form of a parking attendant, signage, clear vehicle pathways, cones or other measures" and that Massco should have "created a designated parking area, used signs or sectioned off an area for patrons to order and eat tacos."

There are several problems with Sakai's argument. First, there is no evidence that the driver of the Avalos vehicle had been to a bar before going to the food truck or that he was impaired or distracted when he hit Sakai with his car and dragged him into the street. Second, there is no evidence that if the proposed measures had been

_____

"outweighed, for a category of negligent conduct, by laws or mores indicating approval of the conduct or by the undesirable consequences of allowing potential liability." (*Id.* at p. 782.) Here, the policy of preventing future harm would not be served by imposing costs on Massco, because, as discussed above, the injury was not reasonably foreseeable. In other words, there is nothing that a parking lot owner can reasonably do to prevent a visitor from making inexplicable decisions to drive dangerously like the driver of the Avalos vehicle did. (See *Formet v. The Lloyd Termite Control Co.* (2010) 185 Cal.App.4th 595, 603 [policy of preventing future harm does not support a duty where "outcome probably would not have been affected" by defendant's alleged misconduct].)

15

implemented at the time of the second accident they would have prevented Sakai's injuries. Third, even if the proposed measures responded to the actual situation posited by Sakai (an impaired or distracted driver) and would have been effective in preventing Sakai's injuries, the burden of implementing such measures, especially the addition of "parking attendants or security personnel to direct traffic," would be onerous. California courts, including our Supreme Court have recognized under a variety of circumstances that a requirement of security guards or inspectors will rarely, if ever, be found to be only a " 'minimal burden,' " and that consequently "a high degree of foreseeability is required in order to find that the scope of a landlord's duty of care includes the hiring of security guards." (*Ann M.*, *supra*, 6 Cal.4th at p. 679; see *Garcia v. Paramount Citrus Assn., Inc.* (2008) 164 Cal.App.4th 1448, 1456 [inspecting every road on farm property is a "significantly greater burden" than posting a sign].)

In cases, " ' "where the burden of preventing future harm is great, a high degree of foreseeability may be required. [Citation.] On the other hand, in cases where . . . the harm can be prevented by simple means, a lesser degree of foreseeability may be required." ' " (*Ann M.*, *supra*, 6 Cal.4th at pp. 678–679.) Here, the exact opposite conditions for the finding of a duty apply—there was a low degree of foreseeability and the burden of preventing similar harm is high.

16

In sum, after considering all of the *Rowland* factors, we decline to hold that an owner of a parking lot, who leases that space out to a mobile food vendor, is, as a matter of policy, liable for all harm that occurs during the hours of operation of that vendor regardless of intervening acts by third parties.

### DISPOSITION

The judgment is affirmed.  The parties are to bear their own costs on appeal.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


BENDIX, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TRAVIS SAKAI, | B279275 |
| | (Los Angeles County |
| Plaintiff and Appellant, | Super. Ct. No. BC561562) |
| v. | CERTIFICATION AND |
| | ORDER FOR PUBLICATION |
| MASSCO INVESTMENTS, LLC, | |
| Defendant and Respondent. | |

The opinion in the above-entitled matter filed February 8, 2018, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


ROTHSCHILD, P. J.        JOHNSON, J.        BENDIX, J.\*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.