Filed 5/21/21  Medical Acquisition v. Valero CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| MEDICAL ACQUISITION COMPANY, INC.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>GELLY YUKON VALERO et al.,<br><br>Defendants and Respondents. | B302409<br><br>(Los Angeles County Super. Ct. No. BC585918) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge.  Affirmed.

David A. Kay for Plaintiff and Appellant.

Southwest Legal Group, L. Dean Smith, Jr., for Defendants and Respondents.

———————————

Appellant Medical Acquisition Company, Inc. (Medical) sued Southwest Law Center (Southwest) and two of its attorneys, respondents Gelly Valero and Anthony Lopez, on a variety of contract and tort theories. Although Medical had no contract with Valero and Lopez, it alleged they were Southwest's alter egos and thus liable for its misconduct. Valero and Lopez moved for summary judgment or, alternatively, for summary adjudication on the ground they had no unity of interest with Southwest. The trial court initially denied that motion but, when Valero and Lopez renewed it months later, the trial court granted the renewed motion for summary judgment. Medical appeals, contending that the trial court had no jurisdiction to grant the renewed motion and that triable issues of material fact precluded summary judgment. We affirm.

## BACKGROUND

I.    The lawsuit

Medical manages personal injury liens for its medical provider clients. When an uninsured person is injured by a third party, Medical provides the uninsured person access to medical providers, who treat the injured person subject to liens to be paid from any recovery on the underlying personal injury case. Southwest[1] represents plaintiffs in personal injury cases. Valero and Lopez (collectively, defendants) worked at Southwest. Although Valero is an attorney, he resigned his license to practice law in California years ago. Lopez owns Southwest and is also an attorney. Since 2008, Medical has provided Southwest's clients

---

[1] Southwest Legal Group is Southwest's fictitious business name.

access to medical providers willing to treat them pursuant to medical liens.

Claiming that Southwest failed to pay liens for medical treatment provided to Southwest's clients, Medical sued Southwest in 2014. Medical's operative second amended complaint named, among others, Lopez, Valero, and Southwest, each of whom was alleged to be the alter ego of the other. The complaint further alleged that Southwest resolved liens without informing or paying Medical and told medical providers that it had paid Medical for liens when it had not, thereby insinuating that Medical was keeping money owed to medical providers. Using these false statements, Southwest convinced medical providers to work directly with it and not with Medical. The complaint further alleged that Southwest received settlement funds and distributed them to Southwest's clients without informing Medical or the medical providers. This allowed Southwest to withhold funds from its clients under the pretense the withheld funds would go to pay the liens. Southwest would then negotiate to pay off the liens for an amount less than it had withheld from its clients and pocket the difference in addition to its legal fees.

Medical's complaint asserted causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, common counts, conversion, intentional and negligent interference with prospective economic advantage, and defamation. In the breach of contract and related contractual causes of action, Medical alleged that Southwest entered into lien contracts with medical providers, and the contracts were assigned to Medical. Southwest breached the contracts by failing to pay the liens. As to the interference with prospective economic

3

advantage causes of action, the complaint alleged that Medical had prospective relationships with personal injury lawyers and health-related entities. Southwest interfered with those relationships by misrepresenting that Medical withheld funds and persuading medical providers to work directly with Southwest instead. This allegation also formed the basis for the defamation cause of action.

## II. The first motion for summary judgment

In September 2018, Lopez and Valero moved for summary judgment or, alternatively, summary adjudication.[2] They argued, among other things, that they were not proper defendants in their personal capacities because they had no unity of interest with Southwest.

Valero and Lopez submitted declarations in support of the motion. Valero declared that although he resigned from practicing law in California in 1998, he remained licensed in Texas and still practiced law there. He was Southwest's office manager but never had an ownership interest in Southwest and had never been its officer. He denied ever signing a pleading, appearing at court, attending a deposition, or filing a lawsuit on a client's behalf. Valero also denied ever signing a lien from any medical provider on Southwest's behalf, holding himself out to be personally liable for Southwest's debts, or personally guaranteeing a contract. He denied saying or writing anything negative about Medical or its president to identified medical providers with whom Medical did business, trying to dissuade the

---

[2] A year earlier, they had filed a motion for summary judgment which apparently was never heard.

4

doctors from working with Medical or its president, or instructing Southwest to stop working with them.

Lopez declared that he has been Southwest's sole owner since it was formed. He did not commingle funds with Southwest, and instead maintained a separate bank account, kept his home and vehicles in his name, and never had Southwest cosign a loan. Southwest always has been fully capitalized and never declared bankruptcy. Lopez never held himself out to be personally liable for any lien or bill from a medical provider. And, similar to Valero's declaration, Lopez denied saying or writing anything negative about Medical or its president to the doctors or trying to dissuade them from working with Medical.

Medical opposed the motion and submitted voluminous exhibits, many of which concerned disciplinary actions against Lopez in California, Oregon, Nevada, and Arizona. The gist of Medical's opposition was its claim that Valero and Lopez, through Southwest and other law offices, would settle personal injury cases brought by largely non-English-speaking clients, present medical liens at full face value to the underlying defendants' insurance companies, and deduct liens at their full face value from the settlement amounts to calculate the amount they reported as payable to their clients. They then would negotiate and delay payment to lienholder Medical, and sometimes misrepresent that a case was still pending when it had settled.

The trial court found that Valero and Lopez had failed to meet their summary judgment burden because they failed to refer to the complaint's allegations. The trial court asked rhetorically, what "activities does plaintiff allege the moving

5

parties engaged in, and their relationship to any other entity? What facts are alleged in support of the 'alter ego allegations', if any? What allegations are the moving parties addressing? The reader is left in the dark without a book light. [¶] The declarations submitted in support of the motion can accordingly only be viewed in a vacuum. It cannot be determined what allegations they address, and why they are material."

The trial court also found that moving defendants failed to demonstrate that Medical had no evidence to establish its causes of action. It explained, "By virtue of the failure to delineate the pleadings at issue, and failure to present any evidence of plaintiff's inability to produce evidence in support of its allegations, defendants have not made a *prima facie* showing that there are no triable issues of material fact. The Court therefore need not address the sufficiency of Plaintiff's evidence; indeed, Plaintiff has no obligation to present any evidence at all."

III.    The second motion for summary judgment

    A.    *Valero and Lopez's moving papers*

Six months after the trial court denied the first motion for summary judgment, Lopez and Valero filed a second motion for summary judgment or, in the alternative, summary adjudication on the same grounds, i.e., that they were not proper defendants because they had no unity of interest with Southwest, and there were no triable issues of material fact as to the causes of action for interference with prospective economic relationships and for defamation.

As to the causes of action for interference with prospective economic relationships, Valero and Lopez asserted that the doctors had declared that defendants never urged them to stop

6

doing business with Medical, and the doctors never agreed to use Medical's services exclusively to factor their medical liens. As to the defamation cause of action, there was no evidence Lopez said or wrote anything defamatory.

Valero and Lopez supported the motion with declarations essentially identical to their earlier ones. Lopez added that Southwest had been in good standing in California during its entire existence and that he received a W-2 from Southwest. His personal accountant had never worked for Southwest, which has its own accounting service and bookkeeper.

Defendants also submitted declarations from doctors with whom Medical and Southwest had business relationships. Drs. Sam Bakshian and Mark Ganjianpour said that Medical factored liens for their uninsured patients' hospital bills; however, they never agreed to use Medical exclusively. Dr. Bakshian did not believe that Valero, Lopez or anyone else at Southwest had ever suggested he stop doing business with Medical or do business directly with Southwest. Dr. Ganjianpour denied having any such conversations with defendants. Dr. Vatche Cabayan testified at his deposition that he made the decision not to use Medical and instead took collections in-house.

In his deposition, Medical's president admitted that Medical had no contract with the doctors requiring them to use Medical to factor all of their hospital bill liens, and the doctors were free to use whatever company they wanted.

B.    *Medical's opposition*

Medical submitted an opposition almost identical to the one it had previously submitted in opposition to the earlier motion for summary judgment. In it, Medical again depicted Valero and Lopez as running a multistate personal injury law firm using

7

deceptive practices to deprive lienholders like Medical of funds due them.  In short, Valero and Lopez told clients that the full face value of medical expenses had to be deducted from any recovery, but then negotiated discounts from lienholders, pocketing the savings for themselves.

In its responsive separate statement, Medical primarily responded to Valero and Lopez's material facts with "Undisputed but immaterial" or "Unknown but immaterial."  When Medical responded that a material fact was undisputed but immaterial, it would then add the following string of its own facts:  Valero and Lopez formed Southwest; Valero was its agent for service of process; Lopez was its incorporator; Valero could not hold stock or be a corporate officer because he was disbarred; Valero managed and operated Southwest and exercised dominion and control over it as de facto owner; and Valero was compensated as an owner based on Southwest's performance.  String citations to evidence followed the string of facts.

When Medical responded that the material fact was unknown but immaterial, Medical then stated the following facts:  Lopez was the sole stockholder and officer and manager of a law firm with operations in three other states in which he is not licensed; Valero, as de facto owner, operated a multistate law firm in four states in which he is not licensed; and defendants were using Southwest to perpetrate a fraud and injustice such that they are personally liable.

Medical clearly disputed just one material fact.  It disagreed that Lopez signed only one lien in his capacity as Southwest's employee.  But Medical did not cite evidence to support its disagreement.

8

C.    *The trial court's ruling*

After describing the evidence in the moving and opposing papers, the trial court began its analysis by finding that errors in Medical's responsive separate statement rendered it "effectively useless." By responding "unknown," Medical violated Code of Civil Procedure[3] section 437c and California Rules of Court, rule 3.1350, and made it impossible to determine whether facts were in dispute. Also, Medical responded to most material facts with argument—not facts—followed by long string citations. The trial court could not ascertain what evidence and arguments corresponded and whether any evidence in the string citations put the alleged facts in dispute. Also, Medical's "essential directive" to the trial court to review 1,000 pages of submitted evidence was improper, as the trial court was not required to consider evidence outside the separate statement. The trial court therefore exercised its discretion to disregard Medical's separate statement.

The trial court thus turned to the merits of the alter ego theory alleged against Valero and Lopez. Citing primarily Valero's and Lopez's declarations, the trial court found they had met their moving burden of showing they did not have a unity of interest with Southwest. The trial court found no reason to hold Valero or Lopez liable on any cause of action, as no cause of action referenced Valero and Lopez individually, and instead all referred to Southwest's liability. The trial court therefore granted summary judgment in Valero and Lopez's favor.

This timely appeal followed.

---

[3] All further undesignated statutory references are to the Code of Civil Procedure.

9

## DISCUSSION

### I.     Procedural issues

The parties each assert this appeal is procedurally barred. Lopez and Valero contend the appeal must be dismissed, while Medical contends that the trial court lacked jurisdiction to hear the second motion for summary judgment.  We reject both assertions.

#### A. *Appealability*

Lopez and Valero contend there is no appealable final judgment because the case remains pending as to Southwest. However, the trial court entered an order granting Valero and Lopez's motion for summary judgment and dismissed them.  Such an order in a multiparty action that leaves no issue remaining to be resolved as to a party is final as to that party and appealable. (*Justus v. Atchison* (1977) 19 Cal.3d 564, 567–568.)  The appeal is properly before us.

#### B. *The trial court's authority to consider the second motion for summary judgment*

Medical argues that the trial court lacked jurisdiction to hear the second motion for summary judgment under section 437c, subdivision (f)(2).  That section provides, "A party shall not move for summary judgment based on issues asserted in a prior motion for summary adjudication and denied by the court unless that party establishes, to the satisfaction of the court, newly discovered facts or circumstances or a change of law supporting the issues reasserted in the summary judgment motion."  (§ 437c, subd. (f)(2).)

*Le Francois v. Goel* (2005) 35 Cal.4th 1094 (*Le Francois*) describes how section 437c, subdivision (f)(2), should be applied. In *Le Francois*, the defendants moved for summary judgment or, alternatively, summary adjudication. The trial court found a triable issue of material fact and denied the motion. (*Id.* at p. 1097.) A year later, the defendants filed a second motion for summary judgment based on the same grounds as the first motion. The plaintiffs objected under section 437c, subdivision (f)(2). The motion was transferred to a new judge, who granted it. On review, the California Supreme Court acknowledged that section 437c, subdivision (f)(2), and its counterpart governing motions for reconsideration, section 1008,[4] limit parties' ability to file repetitive motions. (*Le Francois*, at p. 1104.) The sections thus prohibit a party from making, and the trial court from granting, a motion for reconsideration unless the requirements of sections 437c, subdivision (f)(2), or 1008 are satisfied. (*Le Francois*, at p. 1108.) However, the statutes do not limit a trial court's inherent authority to reconsider a prior interim order on its own motion. (*Ibid.*; accord, *Marshall v. County of San Diego* (2015) 238 Cal.App.4th 1095, 1104.) If a trial court believes it should reconsider a prior order, then the trial court should inform the parties of its concern, solicit briefing, and hold a hearing. (*Le Francois*, at p. 1108.)

In *Le Francois*, the trial court did not act pursuant to its inherent authority but in response to a second motion for summary judgment that did not satisfy the requirements of section 437c, subdivision (f)(2); that is, the motion was not based

---

[4] Section 1008, subdivision (a), allows a party to move for reconsideration of a prior order based on new or different facts or a change in law.

on newly discovered facts, circumstances or a change of law. The Supreme Court held that the trial court therefore erred in granting the motion. It remanded the case to the trial court with the direction that it could reconsider its prior ruling on its own motion.[5] (*Le Francois*, *supra*, 35 Cal.4th at p. 1109.)

We review a trial court's decision to allow a party to file a renewed or subsequent motion for summary judgment for abuse of discretion. (*Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 72.)

Here, the trial court did not err in considering the motion for summary judgment. First, Medical did not raise an objection based on section 437c, subdivision (f)(2), in the trial court, and instead cited it for the first time on appeal. Failure to raise an issue in the trial court forfeits the claim on appeal. (*K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.* (2009) 171 Cal.App.4th 939, 949–950.) Had the parties raised this objection in the trial court, the trial court could have addressed the issue; therefore, we find the issue was forfeited.

Nonetheless, even if we consider the merits of Medical's arguments, we discern no abuse of discretion. Even though the second motion did not raise any newly discovered facts, circumstances or a change of law, section 437c, subdivision (f)(2), did not preclude the renewed motion. The trial court here denied the first motion for a procedural reason: the motion failed to specifically address the allegations in the complaint. As a result, the trial court never reached the merits of the first motion. In

---

[5] One justice agreed that the trial court erred but would have affirmed the judgment because the error did not result in a miscarriage of justice. (*Le Francois*, *supra*, 35 Cal.App.4th at pp. 1109–1110 (conc. & dis. opn. of Kennard, J.).)

essence, the trial court in making its ruling directed the parties how to cure the deficiencies in its motion. Because the second motion did refer to the allegations in the complaint, the trial court apparently believed that the perceived procedural defects in the first motion had been cured so that it could now reach the motion's merits. Thus, where, as here, the first denial was not merits-based, the concerns underlying section 437c, subdivision (f)(2), regarding repetitive meritless motions are not implicated. The trial court could exercise its inherent discretion to hear the renewed motion, this time on the merits, even though the second motion did not present newly discovered facts, circumstances or a change of law. Also, Medical had adequate notice and opportunity to oppose the renewed motion. (See, e.g., *Abassi v. Welke* (2004) 118 Cal.App.4th 1353, 1360 [trial court invited renewed motion and all parties had opportunity for briefing].) The trial court therefore did not abuse its discretion to consider the renewed motion.

We now turn to the merits of the renewed motion, beginning with the standard of review.

II.     Standard of review

A motion for summary judgment shall be granted if the papers show that there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c).) A defendant meets its burden in moving for summary judgment by showing that one or more essential elements of the cause of action cannot be established, or there is a complete defense thereto. (§ 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.) A defendant has shown that the plaintiff cannot establish at least one element of the cause of action "by showing that the plaintiff does not possess,

13

and cannot reasonably obtain, needed evidence." (*Aguilar*, at p. 854.)  Once the moving defendant has met its initial burden, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or defense.  (*Id.* at p. 849.)

A plaintiff cannot defeat the motion with mere allegations or arguments but must instead set forth specific facts supported by admissible evidence showing a triable issue of material fact. Papers opposing a summary judgment motion must include a separate statement that (1) indicates whether the opposing party agrees or disagrees with the moving party's assertion that specific material facts are undisputed, (2) sets forth plainly and concisely any other material facts the opposing party contends are disputed, and (3) refers to the supporting evidence for each contention.  (§ 437c, subd. (b)(3); Cal. Rules of Court, rule 3.1350(f) [content of separate statement] & (h) [format example].) Failure to comply with the requirement of a separate statement may, in the trial court's discretion, constitute a sufficient ground for granting the motion.  (§ 437c, subd. (b)(3); see also *Kojababian v. Genuine Home Loans, Inc.* (2009) 174 Cal.App.4th 408, 416.) However, a trial court may not grant the motion without first determining that the moving party has met its initial burden of proof.  (*Kojababian*, at p. 416.)  Only if the burden has shifted may a trial court find that the opposing party has not satisfied its burden of production to show a triable issue of fact by virtue of a deficient separate statement.  (*Ibid.*)

We review an order granting summary judgment de novo, considering all the evidence in the moving and opposing papers except that to which objections have been sustained.  (*Sakai v. Massco Investments, LLC* (2018) 20 Cal.App.5th 1178, 1183.)  We

view the evidence in a light favorable to the plaintiff as the losing party, liberally construing its evidentiary submission while strictly scrutinizing the defendants' showing, and resolve any evidentiary doubts or ambiguities in the plaintiff's favor.  (*Ibid.*)

III.    Alter ego liability

The trial court found that Valero and Lopez met their moving burden of showing there was no triable issue of material fact as to whether they were Southwest's alter egos, and Medical had not met its opposing burden because it submitted a deficient responsive separate statement, which the trial court exercised its discretion to disregard under section 437c, subdivision (b).  As we now explain, we agree that defendants met their moving burden but that Medical did not meet its opposing one.

The alter ego doctrine is designed to prevent individuals or corporations from misusing corporate laws by forming or using a corporate entity to commit fraud or other misdeeds.  (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538 (*Sonora*).)  "Alter ego is an extreme remedy, sparingly used." (*Id.* at p. 539.)  It will be invoked if two conditions are met.  First, there must be such a unity of interest and ownership between the corporation and its equitable owner that their separate personalities do not in reality exist.  (*Id.* at p. 538.)  Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone.  (*Ibid.*)  To determine whether there is sufficient unity of interest, factors to consider are commingling of funds and assets, the holding out by one entity that it is liable for the other's debts, identical equitable ownership in the two entities, use of the same offices and employees, use of one as a mere shell or conduit for the affairs of the other, inadequate capitalization, disregard of corporate

15

formalities, failure to segregate corporate records, and identical directors and officers.  (*Id.* at pp. 538–539; *Associated Vendors, Inc. v. Oakland Meat Co.* (1962) 210 Cal.App.2d 825, 842.)  No one characteristic governs, and courts must look at all the circumstances to determine whether to apply the doctrine.  (*Sonora*, at p. 539; *Zoran Corp. v. Chen* (2010) 185 Cal.App.4th 799, 811.)

 Before we examine these factors, it is first helpful to frame Medical's argument.  As we understand it, Medical's contention that Valero and Lopez are Southwest's alter egos—and, as such, liable on all causes of action—hinges on Valero's and Lopez's alleged violations of laws governing attorneys.  The theory appears to be that defendants' legal malpractice and disregard of rules governing attorneys compels an alter ego finding.  Medical, however, cites no authority for this novel application of the alter ego doctrine.  While the alter ego doctrine is certainly a vehicle to prevent individuals from hiding behind a corporate entity to commit fraud, Medical provides no authority to suggest it is applicable to the situation here.  (See, e.g., *Sonora*, *supra*, 83 Cal.App.4th at p. 539 [alter ego doctrine is not a tool for every unsatisfied corporate creditor to use to recover debt].)  When a party pursues the alter ego doctrine, the party must address and satisfy the first condition of that doctrine, unity of interest, by establishing the relevant factors.  A party cannot, as Medical attempts to do, persuasively claim those factors are immaterial.

 Turning to those factors, the trial court found that Valero and Lopez met their moving burden of establishing they did not have a unity of interest with Southwest.  The material facts presented were:  Valero had no ownership interest in Southwest and had never been its corporate officer; Lopez never commingled

16

funds with Southwest and instead maintained separate bank accounts; Lopez received a salary from Southwest; Southwest never cosigned a loan for Lopez; Lopez's cars and house are in his name; Lopez and Southwest use different accountants; Southwest has never been undercapitalized or declared bankruptcy; and neither Valero nor Lopez has held himself out to be personally liable for or personally guaranteed any lien owed by Southwest. Valero's and Lopez's declarations supported these material facts. As the trial court found, this evidence was sufficient to meet defendants' moving burden of showing they did not have a unity of interest with Southwest. (See generally *Sonora, supra*, 83 Cal.App.4th at pp. 538–539.) The burden therefore shifted to Medical.

The trial court concluded that Medical submitted a deficient responsive separate statement. A proper separate statement affords due process to opposing parties and permits trial courts to expeditiously review complex motions for summary judgment so that they may efficiently determine whether material facts are disputed. (*Whitehead v. Habig* (2008) 163 Cal.App.4th 896, 902.) Where Medical's statement fell particularly short of meeting that purpose was in its attempt to state additional material facts. Medical did not set its material facts apart in a separate section. Worse, Medical's string of facts was followed by a long string of cites to the voluminous record. As the trial court said, it was impossible to tell what evidence corresponded to what material fact. It was not the trial court's job to piece together the separate statement to make that determination. (See *Mills v. Forestex Co.* (2003) 108 Cal.App.4th 625, 640–641.) A trial court cannot be forced to wade through stacks of documents to determine what evidence is admitted and

17

what remains at issue.  (*Collins v. Hertz Corp.* (2006) 144 Cal.App.4th 64, 72; *San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 316 [trial court need not consider unreferenced evidence hidden in voluminous record].)  We therefore sympathize with the trial court's decision here to disregard Medical's responsive separate statement.

However, without deciding whether the trial court abused its discretion by disregarding Medical's separate statement, we consider it on our de novo review.  We begin by noting that Medical *conceded* almost all of the moving undisputed material facts.  That is, Medical either did not dispute material facts or responded "unknown" to them.  Responding "unknown" at the summary judgment stage of proceedings, where discovery has taken place and there is no claim that further discovery is necessary, is tantamount to a failure to dispute the material fact.[6]  (See § 437c, subd. (b)(3) [opposing statement must agree or disagree with material facts].)  Therefore, Medical failed to dispute the material facts showing that Valero and Lopez were not Southwest's alter ego.

We therefore turn to whether the additional material facts Medical attempted to assert raised a triable issue of material fact as to alter ego.  Medical asserted that Valero used to be Southwest's agent for service of process and that Lopez incorporated Southwest.  Neither fact, alone or together, establishes alter ego.  It is hardly surprising that an office manager is a company's agent for service of process and that Lopez incorporated his own law firm.

---

[6] Medical alludes to a petition for writ of mandate it filed in this court regarding the trial court's orders on discovery disputes.  We denied the petition, and no discovery issue is before us.

18

Next, Medical stated that Valero could not hold stock or be an officer of the firm because he was disbarred. These mere observations are not particularly revelatory in the absence of evidence Valero owned stock in Southwest or was its officer. As to the latter point, Medical did not dispute that Valero has never been an officer of Southwest. The point of these observations is therefore unclear.

Next, Medical asserts that Valero was compensated based on Southwest's performance, which Medical says is how owners are usually compensated. However, from what we can discern, Lopez testified that Valero received a salary *and* a bonus based on the firm's performance. It is unclear how tying a bonus into company performance shows alter ego.

Medical then generally asserted that Valero managed and operated Southwest and had such control over it that he was a de facto owner. To the trial court, and to us, this is argument or a legal conclusion to be drawn from the evidence rather than a proper responsive material fact. Medical should have cited *facts* to support this conclusion. Moreover, the evidence that appears to be cited to support this "fact" merely shows that Valero engaged in activities consistent with being an officer manager: advertising, marketing, helping with hiring, and supervising nonlitigation employees.

Other evidence Medical cited is also not indicative of alter ego. Medical states that Valero's family trust owned the property where Southwest's office was located, and some of his relatives worked at the firm. Something more than this is required to show alter ego. In *Eleanor Licensing LLC v. Classic Recreations LLC* (2018) 21 Cal.App.5th 599, 615, for example, the individual co-owner of the corporate defendants said that he and the

19

corporations were one and the same, and he personally agreed to honor an agreement. The trial court found that this evidence was sufficient to show a unity of interest between the individual owners and their companies, but the Court of Appeal disagreed. That the co-owners of the closely held family businesses were authorized to make all decisions in no way indicated "any commingling of personal and corporate assets, use of corporate assets for personal purposes, gross undercapitalization of the corporate entities, disregard of corporate formalities or any other of the many circumstances that might support the conclusion that no separation actually existed between these two individuals and the two corporate entities." (*Id.* at p. 616.) Similarly, Valero may be Southwest's landlord, but this fact does not otherwise show, for example, that he has commingled assets or disregarded corporate formalities.

Next, a considerable portion of Medical's evidence was directed at showing that Valero, who was not licensed to practice law in California, illegally controlled Southwest (see, e.g., Bus. & Prof. Code, § 6165 [each director, shareholder, officer of law corporation shall be a licensed person]) and that he and Lopez were otherwise committing malpractice. To these points, Medical submitted evidence showing that Valero and Lopez have been disciplined in other states, sometimes for conduct similar to the conduct alleged here. Valero represented in social media and on Southwest's website that he is one of its attorneys.[7] Also, an attorney who had worked at Southwest testified that Valero was "actively involved" with clients, although the attorney did not elaborate. Another former employee thought that Valero was a

---

[7] Medical fails to point out that Southwest's website states that Valero is *not* licensed in California.

20

part owner of Southwest because she reported to and discussed cases with him. Valero and Lopez also sometimes discussed cases, and Valero acted as a go-between with medical providers, but he never suggested what Lopez should demand for a case. Finally, Southwest has been holding settlement funds in trust, in one case for five years.

As we have said, this evidence may be relevant to a theory that defendants have committed malpractice or otherwise violated their ethical duties. But they do not show that defendants are Southwest's alter egos. Disregard of laws governing the practice of law is not tantamount to disregard of corporate formalities for the purpose of applying the alter ego doctrine. Whatever the merits of Medical's contention that Valero and Lopez committed legal malpractice or otherwise violated the rules of professional conduct, Medical has cited no authority holding that such conduct is a conduit to apply the alter ego doctrine.[8] If Valero and Lopez are personally liable in some way to Medical, it is not via that doctrine.

IV.    The intentional and negligent interference with prospective economic advantage and defamation causes of action

The trial court found that Medical's inability to raise a triable issue of material fact as to the alter ego issue was fatal to *all* causes of action, because no cause of action referenced Valero and Lopez specifically but instead referred only to Southwest. We agree that Medical never alleged any specific acts Valero and Lopez *personally* committed to show their personal liability on the tort-based causes of action, i.e., interference with prospective

---

[8] We express no opinion whether Medical's evidence shows that defendants have committed malpractice.

21

economic advantage and defamation.  Moreover, Medical does not address these causes of action in its briefs on appeal, other than peripherally in the context of the alter ego doctrine.  Therefore, any other contention that might be made as to these causes of action has been abandoned.  (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699–700 [issue not supported by pertinent or cognizable legal argument may be deemed abandoned].)

## DISPOSITION

The judgment is affirmed.  Gelly Valero and Anthony Lopez may recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

EGERTON, J.