**NOT FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

MAR 18 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ROBIN WINGER, | No.   18-56118 |
| Plaintiff-Appellant, | D.C. No. 8:13-cv-00267-AG-RNB |
| v. | |
| CITY OF GARDEN GROVE; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Argued and Submitted December 9, 2019
Pasadena, California

Before:  WARDLAW and LEE, Circuit Judges, and KENNELLY,** District Judge.

In her second appeal to this Court, Robin Winger challenges the district

court's grant of summary judgment in favor of City of Garden Grove police

officers Charles Starnes and Michael Elhami on the basis of statutory immunity.

Because the parties are familiar with the facts, we repeat them only as necessary to

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Matthew F. Kennelly, United States District Judge for the Northern District of Illinois, sitting by designation.

explain our reasoning. For the reasons stated below, we reverse and remand.

We review *de novo* a grant of summary judgment. *Rojas v. FAA*, 941 F.3d 392, 402 (9th Cir. 2019). "We view the evidence in the light most favorable to the nonmoving party, determine whether there are any genuine issues of material fact, and decide whether the district court correctly applied the relevant substantive law." *Id.* (alteration, citation, and internal quotation marks omitted).

## I

The initial issue in this case is whether, under California law, a law enforcement officer owes a duty of reasonable care to an arrestee in his custody who needs immediate medical attention. *See Davidson v. City of Westminster*, 32 Cal. 3d 197, 201–02, 649 P.2d 894, 896 (1982) (courts address legal duty before addressing statutory immunity). When, as here, we confront a state law issue without precedent from the state's highest court, we "predict how the state high court would resolve it" by, among other things, looking for guidance to decisions by the state's intermediate appellate courts. *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007) . Although no California court has squarely decided the issue presented by this case, the California Supreme Court has stated that a law enforcement officer has a duty of care when his conduct, "in a situation of dependency, results in detrimental reliance on him for protection." *Williams v. State of California*, 34 Cal. 3d 18, 25,

2

664 P.2d 137, 141 (1983); *see also Lugtu v. California Highway Patrol*, 26 Cal. 4th 703, 718, 28 P.3d 249, 257 (2001) ("[A] law enforcement officer has a duty to exercise reasonable care for the safety of those persons whom the officer stops, and . . . this duty includes the obligation not to expose such persons to an unreasonable risk of injury by third parties.").

In an analogous case, a California intermediate appellate court concluded that a jailer owes a duty of care to a prisoner who needs immediate medical attention. *Giraldo v. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231, 250, 85 Cal. Rptr. 3d 371, 386 (2011). The reasoning employed by the court in *Giraldo* and the general principles just referenced persuade us that the California Supreme Court would hold that a law enforcement officer owes a duty of care to an arrestee in his custody who needs immediate medical care. In *Giraldo*, the court found that a jailer owes a duty of care to a prisoner because it is foreseeable that a prisoner suffering from a medical emergency "may be at risk of harm," and because a prisoner in need of medical attention is vulnerable and dependent upon the jailer, who controls the prisoner's ability to seek medical care. *Id.* A similar relationship exists between a law enforcement officer and an arrestee in his custody in need of immediate medical attention.

Our conclusion that the California Supreme Court likely would apply the reasoning of *Giraldo* to this case is buttressed by the California Supreme Court's

later reliance on *Giraldo* to state that "[a] typical setting for the recognition of a special relationship is where the plaintiff is particularly vulnerable and dependent upon the defendant who, correspondingly, has some control over the plaintiff's welfare," *Regents of Univ. of California v. Superior Court*, 4 Cal. 5th 607, 621, 413 P.3d 656, 665 (2018) (alteration and internal quotation marks omitted) (quoting *Giraldo*, 168 Cal.App.4th at 245-246, 85 Cal.Rptr.3d at 382). Therefore, we conclude that the California Supreme Court would conclude that a law enforcement officer owes a duty of reasonable care to an arrestee in his custody who needs immediate medical attention.

## II

The district court erred in finding that Elhami and Starnes were entitled to immunity under California Government Code § 845.6. Because Winger was not "a prisoner in [their] custody" as state law defines that term, Elhami and Starnes are not eligible for immunity under Section 845.6. *See* Cal. Gov't Code §§ 845.6, 844; *Fearon v. Dep't of Corr.*, 162 Cal. App. 3d 1254, 1256, 209 Cal. Rptr. 309, 311 (1984); *Larson v. City of Oakland*, 17 Cal. App. 3d 91, 97, 94 Cal. Rptr. 466, 470 (1971).

## III

Viewing the evidence in the light most favorable to Winger, there is a genuine factual dispute regarding whether Elhami and Starnes breached the duty of

reasonable care they owed to Winger by failing to take her to the hospital after they arrested her. The issue of breach is a factual determination based on "the totality of the circumstances." *See Hernandez v. City of Pomona*, 46 Cal. 4th 501, 514, 207 P.3d 506, 515 (2009); *see also Vasilenko v. Grace Family Church*, 3 Cal. 5th 1077, 1084, 404 P.3d 1196, 1199 (2017).

## A.

There is a genuine factual dispute regarding whether Elhami and Starnes should have recognized that Winger needed immediate medical care and thus whether they acted unreasonably by taking her to the police lockup instead of to a hospital. Winger was unable to spell her first name, recall her last name, or provide coherent answers to basic questions such as where she lived, what the time was, and when she last ate. She repeatedly told Elhami that she did not feel well, and that she recently had spent time in the hospital, which Elhami conveyed to Starnes. She placed her hand near her chest when Elhami first approached her, which, he testified, indicated to him that "there was something possibly internally wrong with her"; within one minute of encountering Winger, he reported to a police dispatcher than she complained of "pains to the chest." Both officers had completed training on how to recognize the symptoms of a stroke, and a doctor who treated Winger testified that her inability to state her last name was not a typical sign of intoxication but rather a stroke symptom that should have been

5

recognizable to someone trained in stroke detection.

Further, there is a genuine factual dispute regarding whether Winger exhibited facial drooping, a common symptom of a stroke. Starnes and Elhami both testified that Winger's eyelids looked "droopy," although she exhibited no facial asymmetry; Starnes circled the words "[d]roopy eyelids" on a police report entitled "drug influence report"; Winger's daughter testified that Winger's face showed drooping on the left side when she pulled over the car, and when she spoke to the paramedics; and Winger's boyfriend testified that "one side of her face looked droopy" when he picked her up at the jail.

Viewed in the light most favorable to Winger, a reasonable jury considering this evidence could find that the officers should have recognized that she needed immediate medical care and that they acted unreasonably by declining to take her to a hospital.

## B.

A reasonable jury also could find that Winger was not capable of refusing medical care, that Elhami and Starnes should have recognized her incapacity, and that as a result they were negligent in taking her to a lockup instead of to a hospital even though she refused medical care. The jury could base this finding on Winger's incoherent and confused answers to questions before, and after the paramedics examined her. Additionally, a retired deputy chief of police testified

6

that reasonable law enforcement officers would have recognized that if Winger was not fully coherent, she was not capable of refusing medical care. Further, firefighters who were at the scene testified that they believed that Winger should have gone to the hospital, and encouraged her to do so. One firefighter testified that he informed Elhami, in the presence of Starnes, of his belief that Winger should be taken to a hospital, though it is disputed whether the firefighter suggested to the officers that they should take her to the hospital against her will.

Because there is a genuine factual dispute regarding whether Elhami and Starnes breached their duty of reasonable care to Winger, we reverse the grant of summary judgment and remand the case to the district court for trial.[1]

**REVERSED AND REMANDED.**

---

[1] Contrary to the dissent's characterization of today's decision, we do not find that Elhami and Starnes acted unreasonably and do not impose liability. Our opinion does nothing more than conclude that there is a genuine factual dispute regarding whether Elhami and Starnes breached their duty of reasonable care to Winger.

*Robin Winger v. City of Garden Grove*, No. 18-56118
LEE, Circuit Judge, dissenting:

There are no real winners in this case. Robin Winger suffered a stroke while driving her car, but she did not realize it and repeatedly refused medical care offered by first-responders. Garden Grove police officers Starnes and Elhami mistakenly — but reasonably under the circumstances — believed that she was under the influence of drugs or alcohol, and booked her in jail. As a result, Winger suffered unnecessarily. With the benefit of hindsight, the police officers should have perhaps compelled Winger to go to the hospital against her wishes. But I do not believe that the police officers acted unreasonably, given what they knew at the time. Accordingly, I respectfully dissent.[1]

While Garden Grove police officers receive some training on how to recognize symptoms of a stroke (*e.g.*, disorientation, facial drooping), those symptoms are also consistent with drug or alcohol use. The Garden Grove Police Department Drug Influence Report form — which was filled out by Officer Starnes — lists various drugs, along with common symptoms associated with them. For "OPIATE," it lists "Droopy Eyelids" (which Officer Starnes circled). For "DEPRESSANTS," it includes "Droopy Eyes" (which was also circled).

---

[1] I am assuming that California law imposes a duty of reasonable care to an arrestee in need of immediate medical attention, and that California Government Code § 845.6's immunity provision does not apply here.

Under "HALLUCINOGENS," the symptoms "Dazed" and "Disoriented" were both circled by Officer Starnes. And "INHALANTS" notes "Confusion" and "Disorientation." Similarly, the Garden Grove Police Sobriety Form lists "sleepy" eyes as a symptom of intoxication, and Officer Starnes circled that symptom as well.

The police officers were not alone in their mistaken assessment of Winger. Emergency room doctor Bharath Chakravarthy who examined Winger wrote that he doubted that she had suffered a stroke, but rather believed that she was likely suffering from a "drug-induced psychosis." It was only after further testing that the doctors confirmed that Winger had in fact suffered a stroke. We ask too much of first-responders if we expose them to potential liability for failing to recognize a stroke when an emergency doctor did not initially diagnose it, either.

Furthermore, Officers Elhami and Starnes acted reasonably when they declined to take her to the hospital against her wishes when Winger repeatedly rejected medical care. After pulling Winger over and speaking with her, Officer Elhami called the police dispatcher and requested medical assistance to the scene. Winger explained that she had been to the hospital recently, but told him that she was "okay" and declined medical assistance. Officer Elhami told her that the paramedics were nonetheless coming. After the paramedics evaluated Winger, she again declined medical attention and signed a waiver form declining it. Even after

that, Officer Elhami again suggested that Winger go to the hospital, but Winger's daughter said her mother "seems much better." While the police officers ultimately arrested Winger for suspected intoxication or drug use, they knew that Winger would receive a medical screening at jail prior to being booked. And Winger did receive that medical screening — without anyone diagnosing her as suffering from a stroke.

Because I believe Officers Elhami and Starnes made difficult judgment calls and acted reasonably based on what they knew at the time, we should not second-guess their decisions. Accordingly, I respectfully dissent.