Filed 9/13/22 Sculls v. Boardners CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JONNY SCULLS, et al., | B309933 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. BC665786) |
| BOARDNERS, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kristin S. Escalante, Judge. Affirmed.

Law Offices of Edward Y. Lee, Edward Y. Lee and Angela S. Lee, for Plaintiffs and Appellants.

Freeman Mathis & Gary, Stephen M. Caine and Robert A. Latham, for Defendant and Respondent.

—————————————

Plaintiffs Jonny and Lacey Sculls appeal after the trial court granted summary judgment on their premises liability claim against defendant Boardners, Inc. The Sculls argue the trial court erred in concluding Boardners had no duty to provide additional or more competent security guards at its nightclub that could have prevented a brief physical altercation between the Sculls and acquaintances. We affirm because the Sculls have failed to show the existence of a triable, material issue of fact that Boardners owed the Sculls a duty to protect against the harm that occurred during the brief altercation.

### FACTUAL AND PROCEDURAL BACKGROUND

**1.    The Parties**

Boardners is a corporation that owns a bar and nightclub in Hollywood. The bar area has a capacity of 69; the nightclub area can hold 408 people, including the upstairs, downstairs and patio. For more than 20 years, Boardners has hosted a weekly Saturday night event called Bar Sinister in its nightclub area.

Boardners employs security guards and stations some of them at the entrance of the club and at a glass door that separates the Boardners bar and restaurant from the nightclub; other guards roam the venue. The security guards are responsible for monitoring patron behavior. Boardners requires its security guards to obtain "guard cards," which involves annual security guard training and certification. The owner of the club, who only hires guards with experience, requests the guards undergo their training with the Los Angeles Police Department. All guards are instructed on Boardners's current security guard policies and procedures.

Plaintiffs Jonny Sculls, Lacey Sculls, and Erin Skold, and defendants Tim Skold and Tiffany Lowe were regular patrons at

2

the club.  Prior to the incident, the Sculls and Skolds had been friendly acquaintances.  They had been to each other's homes for social gatherings.  Tiffany Lowe was a friend and colleague of the Skolds.  Lacey Sculls had been friends with Tiffany Lowe – she had invited Tiffany to her bachelorette party.  But it was also undisputed that Lacey and Tiffany had had several verbal conflicts over the years.  There was, however, no history of violence among any of the parties.

## 2.     The Physical Altercation at Boardners

On Saturday, January 29, 2017, four security guards were in the nightclub and one more in the main bar.  At 2:00 a.m., Lacey and Jonny Sculls, Erin and Tim Skold, and Tiffany Lowe were at Bar Sinister.  The Skolds and Lowe occupied part of the nightclub known as a VIP area, which was accessible to all patrons and near an exit.[1]  Around 2 a.m., Tiffany Lowe encountered Lacey Sculls near the VIP area, and they had a minute-long argument before parting ways.  About five to ten minutes later, Jonny and Lacey Sculls walked into the VIP area. Lacey and Tiffany had an argument that turned physical.  Jonny

---

[1]     Earlier in the evening, the Skolds had been at another nightclub with Lowe when they were approached by a Bar Sinister representative and invited as "VIP guests" to Bar Sinister.

The trial court summarized testimony from the Skolds: "When the group arrived, they were escorted to what the Skolds characterize as 'the VIP area.'  Tim Skold appreciated being seated in a VIP booth because he is a musician who is popular with patrons of Bar Sinister and fans would sometimes intrude on his group.  The VIP area was not roped off but Erin [Skold] testified that 'everyone knew' it was the VIP area.  One of the exits of the club is through the VIP area, so patrons were able to walk through the area."

Sculls, Tim Skold, and Erin Skold joined the physical altercation. The Skolds and the Sculls disagree about who initiated the incident. For our purposes, it matters not who did what to whom; suffice it to say that there was pushing, shoving, hair pulling, and falling to the ground. Punches may have been thrown.

The Skolds and Jonny Sculls testified that the entire altercation (verbal and physical) lasted less than a minute. Lacey Sculls was inconsistent in her statements concerning the length of the altercation—estimating less than a minute to three or four minutes. Security guards were not present in the VIP area immediately prior to or during the altercation. The Sculls then either left or were escorted out by security. Security later escorted the Skolds's party out a different exit.

## 3. Lawsuits Related to the Fight at Boardners

The Sculls sued Tiffany Lowe and Tim Skold for assault and battery, and Boardners for premises liability in Los Angeles Superior Court Case No. BC665786. The Sculls alleged that on January 29, 2017 while at Bar Sinister, they were physically attacked by Tiffany Lowe and Tim Skold, with resulting personal injuries. The trial court's August 27, 2020 minute order indicates Tiffany Lowe is in default and the claims against Tim Skold have been dismissed.[2]

In their complaint, the Sculls alleged Boardners "owed to [p]laintiffs a duty to protect them from the tortious and/or criminal acts of said [Boardners]' own employees, agents, security personnel and/or other third persons occurring on the [p]remises by maintaining the [p]remises in a reasonably safe manner for

---

[2] Tim Skold filed a cross-complaint, alleging that he was injured in the altercation and that the Sculls were the aggressors. The cross-complaint was also dismissed.

4

their intended purpose. [¶] . . . [Boardners] negligently maintained, managed, controlled, promoted and operated the [p]remises by failing to adequately train, supervise and/or control the action of its agents, personnel and/or employees, resulting in a failure to protect [p]laintiffs from an assault and battery." The complaint alleged that plaintiffs sustained injuries.

The Sculls claimed that Boardners "breached [its] duty of care to [p]laintiffs by failing to properly employ security guards or personnel to protect the safety of their customers despite having reasonable cause to anticipate acts such as the ones employed by [d]efendant Lowe and [d]efendant Skold and the probability of injury resulting therefrom." The Sculls asserted that Boardners "knew or in the exercise of reasonable care should have known that the acts such as the ones employed by [d]efendants Lowe and Skold were reasonably anticipated to occur," and that Boardners "negligently failed to take steps to either make the Premises safe or to warn [p]laintiffs about the dangers."

In a separate action (Case No. 19STCV03569) which was consolidated in the trial court with the Sculls's case, plaintiff Erin Skold alleged she was injured in the altercation and asserted claims for assault and battery against the Sculls and a premises liability claim against Boardners.

4.     **Summary Judgment**

On May 13, 2020, Boardners moved for summary judgment, arguing it had no duty to protect the Sculls or Erin Skold because Boardners could not have reasonably anticipated an altercation among people who had an amicable relationship, especially where the incident had lasted less than a minute. Boardners argued nothing in the record suggested that the

5

parties had ever been involved in a previous physical altercation with each other, and Jonny Skull and Tim Skold had testified that "they had no bad blood with one another." Boardners explained, "The undisputed facts in the case show that the fight lasted approximately 40 seconds from the time Tiffany and Lacey started it until Tim and Jonny are getting helped up from the ground. Tim Skold, who was only feet away from Tiffany and Lacey at the time of the incident, testified that it was only five (5) seconds, at most, between the time he heard yelling until he ended up on the floor." Boardners argued, "[T]here has not been any evidence presented by any [p]laintiffs pointing out any factual inadequacy of Boardners' security or how it could ever be liable to any of the [p]laintiffs under a premises liability theory."

Boardners's motion was supported by testimony from its owner stating there had been no consistent pattern or history of fighting at Bar Sinister.[3] The owner's deposition testimony described the club's security guard training, duties, and locations in the club (as described above). Boardners also produced deposition testimony from plaintiffs showing the amicable relationship they had with those involved in the altercation. Boardners attached video footage of the physical altercation taken from a security camera overlooking the VIP area. The video showed that the verbal and physical altercation was very brief—less than a minute.

---

[3] Boardners's owner was asked in her deposition whether there was "any history of rowdy behavior fights that start at Bar Sinister events." She responded that "it's a bar so there's all sorts of exciting activity that happens at a bar." She elaborated that she was not aware of any "consistent history" of fights at the bar and knew of no more than one or two incidents.

The Sculls and Erin Skold opposed the motion. We only discuss the Sculls's arguments as Erin Skold's case is not at issue on appeal. The Sculls argued that Boardners failed to stop the fight as soon as possible after it started, and Boardners failed to provide a staff adequate to police the premises. They asserted these points were evidenced by testimony from the parties that they did not observe or were unable to recall seeing security or staff in the VIP area while they were there. The Sculls argued that because Tim Skold was invited to Bar Sinister by a Boardners employee while at another bar and because he arrived intoxicated, "Boardners should have known that Tim, and possibly others in his group, could become obstreperous." Lastly, the Sculls asserted Boardners failed to provide adequate security.

The trial court granted Boardners's motion for summary judgment against the Sculls (as well as Erin Skold). The court explained its ruling in a 12-page order, stating in part:

"To the extent that the plaintiffs' claims are based on the allegation that Boardners should have employed additional security guards, the Court concludes that Boardners is entitled to judgment in its favor. The Supreme Court has held, as a matter of law, that requiring a bar owner to provide security guards imposes a significant burden and therefore the plaintiff must demonstrate a heightened degree of foreseeability. [Citation.] An even higher degree of foreseeability is required when defendant has employed security guards but the plaintiff contends that even more guards should have been hired. Boardners, as the moving party, bears the initial burden of affirmatively negating the issue of

7

heightened foreseeability or of showing that plaintiffs do not have and cannot reasonably obtain such evidence. The Court finds that Boardners has [*sic*] its initial burden here. As previously noted, Boardners presented evidence that it had provided four security guards to cover the Bar Sinister event and that there had only been one or two incidents involving injuries in the last five years. The *Delgado* [*v. Trax Bar & Grill* (2005) 36 Cal.4th 224 (*Delgado*)] Court found that a record of 'a few prior altercations between patrons' does not give rise degree of heightened foreseeability that would require a bar to provide additional security guards. (*Delgado, supra*, 36 Cal.4th at 245).

"The burden thus shifted to the plaintiffs to raise a triable issue of fact as to this issue, and specifically evidence of prior similar incidents that could have been avoided by more security guards. The plaintiffs have provided no evidence regarding any prior altercations at the bar involving any of Boardners' patrons that would support a finding of heightened level of foreseeability here. . . . Given the absence of evidence of relevant prior altercations at the bar that would support the need for additional security guards, the plaintiffs have failed to raise a triable issue of fact that Boardners owed a duty to supply additional security guards.

"The Sculls and Erin Skold also argue that Boardners should have intervened when the physical altercation began. To meet its initial burden as to this claim, Boardners focuses on the fact that the entire incident was over within seconds or minutes. The time estimates for the entire event - including the verbal altercation leading up to the physical fight - range from 30 to 40 seconds to 3 to 4 minutes. Jonny Sculls estimated that the physical altercation lasted about 20 seconds and that the entire incident, including the verbal altercation between Lowe and Lacey, lasted only about 40 seconds. Erin Skold testified [the] altercation lasted about 40 seconds, or less than a minute. Tim Skold estimated that the physical altercation lasted only about 5 seconds. Lacey Sculls is the only witness to provide a 3-to-4-minute time estimate, and she admits that despite the verbal insults, the physical attack by Tiffany Lowe was 'completely unexpected' and thus unforeseeable. All of the participants testified that the altercation quickly resolved and that all participants immediately left or were escorted by security off the premises. The surveillance video submitted supports the same conclusion. Further, other than saying vaguely that Boardners' security should have intervened in the altercation, no party identifies any specific action that Boardners could or should have taken.

"[¶] . . . [¶]

"In short, given the lack of evidence that Boardners' personnel had knowledge of aggressive or obstreperous behavior, the plaintiffs have not established a duty arising from allowing a person who had become obstreperous and aggressive to remain on the premises. The evidence shows that when the physical altercation occurred, both sets of patrons either left immediately or were immediately escorted off the premises by security. There is no evidence that Boardners' had any information regarding an imminent altercation prior to that point.

"The Sculls and Erin Skold also suggest that the bar should have ejected the others because members of the group were visibly intoxicated. While the evidence shows that Tim Skold, Lacey Sculls and other members of the group had been drinking on the night in question, the evidence is not sufficient to raise a triable issue of fact that Boardners knew that they were so intoxicated that they presented a foreseeable risk of a physical altercation. As previously discussed, the Sculls and the Skolds were regulars at the bar. There never had been any physical altercations involving them. There is no evidence that the level of intoxication on the night in question was unusual."

The trial court entered judgment in favor of Boardners and against the Sculls and Erin Skold on December 4, 2020.

Both the Sculls and Erin Skold filed timely notices of appeal. Their appeals (respectively, appellate case numbers B309933 and B310751) were consolidated on April 22, 2021. Erin Skold did not file an opening brief and her appeal was dismissed on October 25, 2021. Only the Sculls' premises liability claim against Boardners is at issue on appeal.

## DISCUSSION

The Sculls argue they produced sufficient evidence to establish a triable issue of fact as to whether Boardners employed a sufficient number of or sufficiently competent security guards. "On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.] Under California's traditional rules, we determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law." (*Guz v. Bechtel National Inc.* (2000) 24 Cal.4th 317, 334.)

1. **Premises Liability and Employment of Security Guards**

"The elements of a negligence claim and a premises liability claim are . . . a legal duty of care, breach of that duty, and proximate cause resulting in injury." (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158.) Although at times on appeal,

11

Boardners argues there was no breach of duty or proximate cause, Boardners primarily argued the absence of duty in its summary judgment motion. The Sculls's opening brief – they filed no reply brief – also addresses the three elements of premises liability. Nonetheless, we frame our discussion in terms of whether Boardners had a duty to protect plaintiffs from this type of altercation as this was the basis for the motion and the court's ruling.[4]

The "existence of a legal duty is a question of law for the court to determine [citation], that foreseeability is a 'crucial factor' in determining the existence and scope of a legal duty [citation], and that '[f]oreseeability, when analyzed to determine the existence or scope of a duty, is a question of law to be decided by the court . . . .' " (*Delgado, supra*, 36 Cal.4th at p. 237.)

There is a special relationship between business proprietors, like bars, and their patrons such that "a proprietor's 'general duty of maintenance, which is owed to tenants and patrons, . . . include[s] the duty to take reasonable steps to secure common areas against foreseeable criminal acts of third parties that are likely to occur in the absence of such precautionary measures.' " (*Delgado, supra*, 36 Cal.4th at p. 235, italics omitted.)

To assess whether the business proprietor owes a particular duty, "the court in each case (whether trial or appellate) [must] identify the specific action or actions the plaintiff claims the defendant had a duty to undertake. 'Only after the scope of the duty under consideration is defined may a

_____

[4]     As we briefly discuss below, our disposition of the appeal would be the same even if it were founded on the breach of duty or proximate cause elements.

12

court meaningfully undertake the balancing analysis of the risks and burdens present in a given case to determine whether the specific obligations should or should not be imposed on the landlord.' [Citation.] . . . . [T]he full analytical process [occurs] this way: 'First, the court must determine the specific measures the plaintiff asserts the defendant should have taken to prevent the harm. This frames the issue for the court's determination by defining the scope of the duty under consideration. Second, the court must analyze how financially and socially burdensome these proposed measures would be to a landlord, which measures could range from minimally burdensome to significantly burdensome under the facts of the case. Third, the court must identify the nature of the third party conduct that the plaintiff claims could have been prevented had the landlord taken the proposed measures, and assess how foreseeable (on a continuum from a mere possibility to a reasonable probability) it was that this conduct would occur. Once the burden and foreseeability have been independently assessed, they can be compared in determining the scope of the duty the court imposes on a given defendant. The more certain the likelihood of harm, the higher the burden a court will impose on a landlord to prevent it; the less foreseeable the harm, the lower the burden a court will place on a landlord.' " (*Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1214.)

When a plaintiff claims a business proprietor had a duty to provide security guards, or in this instance *more* security guards, the plaintiff's burden is great: "only when 'heightened' foreseeability of third party criminal activity on the premises exists—shown by prior similar incidents or other indications of a reasonably foreseeable risk of violent criminal assaults in that

location—does the scope of a business proprietor's special-relationship-based duty include an obligation to provide guards to protect the safety of patrons." (*Delgado, supra*, 36 Cal.4th at p. 240, italics omitted.)

## 2. The Sculls Failed to Show Boardners Had a Duty to Employ Additional Security Guards

The Sculls argued that Boardners should have hired additional security guards. Such a security measure is, under the authorities cited, considered particularly burdensome on the proprietor, and requires a heightened degree of foreseeability of criminal activity on the premises. (*Delgado, supra*, 36 Cal.4th at p. 240.) Thus, the Sculls were required to show a high likelihood that additional security guards were necessary to protect against altercations of this sort.

In its summary judgment papers, Boardners demonstrated that physical altercations were not foreseeable, as there had been only a handful of undefined incidents in the past. Boardners employed four trained and certified security guards at different locations within the club. In support of its argument that this type of physical altercation was not foreseeable, Boardners pointed to the fact the Sculls, Skolds, and Lowe were friendly and had no history of violent altercations among themselves or at Bar Sinister. Lacey Scull admitted the violence was unexpected, and the parties generally stated the physical fight ended very quickly. There is no evidence whatsoever that Boardners knew of aggressive behavior among the parties prior to the incident. Any speculation that Boardners could have anticipated the altercation or that additional security guards would have prevented any injuries was just that—speculation. (C.f. *Delgado, supra*, 36 Cal.4th at p. 250 [the court found there was a duty to protect

14

plaintiff where the security guard was aware there was an impending fight and directed plaintiff to leave bar but failed to escort plaintiff to his car or to coordinate with the outside security guard to keep the assailant and his fellow gang members away from plaintiff].)

The undisputed evidence was that the nightclub itself had no history of fights (only one or two incidents). Appellants pointed to nothing in Boardners's history that would reasonably indicate the need for additional security. In *Delgado*, our Supreme Court explained, "few prior altercations between patrons . . . [are] insufficient evidence of heightened foreseeability in the form of prior similar incidents or other indications of a reasonably foreseeable risk of a violent criminal assault on defendant's premises that would have imposed upon defendant an obligation to provide any guard, or additional guards, to protect against third party assaults." (*Delgado, supra*, 36 Cal.4th at p. 245.)

Boardners's evidence satisfied its prima facie obligation to show it was entitled to judgment as a matter of law, and shifted the burden to the Sculls to show that the premises were foreseeably unsafe without additional security guards. The Sculls produced no such evidence. As an example, no expert testified on the number of security guards typically employed in comparable establishments or that additional security guards would have prevented any foreseeable harm.

The Sculls were loud and clear in their briefing that more guards would have prevented the disturbance, counsel's insistence was just that – insistence, without supporting evidence. For example, the Sculls argue that because Boardner's property is large and on average 350 guests enter and leave Bar

Sinister throughout the night, four security guards were insufficient. But the Sculls offered no evidence on the number of guests on the premises at the time of the altercation or the reasonable ratio of guards to patrons based on the type of establishment and any prior history of violence.[5]

We conclude, as a matter of law, that the evidence failed to show that Boardners had a duty to hire additional security guards.

## 3. Plaintiffs Failed to Show Boardners Owed the Sculls a Duty to Employ "More Competent" Security Guards

The Sculls argue on appeal that Boardners also had a duty to provide security guards who were more competent than the ones employed that evening. In its summary judgment papers, Boardners produced evidence that it required its security guards to have "guard cards," obtained through yearly training and certification. The owner testified that Boardners only hired experienced security guards, and requested the guards to undergo training with the Los Angeles Police Department. All guards were instructed on Boardners's current security guard policies and procedures. We agree with the trial court that in producing this evidence, Boardners satisfied its burden to show its guards were competent, shifting the burden to the Sculls.

---

[5]     The Sculls rely on the testimony of Boardners's owner that "it's a bar so there's all sorts of exciting activity that happens at a bar." This evidence is insufficient on its own to meet the Sculls's burden. The vagaries of "exciting activity" aside, Boardners's owner explained she was not aware of any "consistent history" of fights at the bar.

Again, the Sculls produced no evidence and emphatic assertions without supporting evidence do not suffice.

There was no evidence that the Boardners's security guards were not competent or what additional training was necessary for them to achieve the level of competency the Sculls believed was legally required.  The Sculls argue that "guard cards" do not show competency, but that assertion reverses the summary judgment burden – they offered no evidence of incompetency or how training would have prevented the altercation.  The Sculls assert that lack of competency was illustrated by their absence from the VIP area vicinity when the physical alteration occurred.  The Sculls rhetorically ask:  "What were the security guards doing? Were they socializing with each other and not performing their required job functions?  Were they patrolling the entire venue or just stationed in certain areas?"  Rhetorical questions are no substitute for evidence.

### *DISPOSITION*

The judgment is affirmed.  Defendant and respondent Boardners, Inc. shall recover its costs on appeal.

RUBIN, P. J.

WE CONCUR:

BAKER, J.                              KIM, J.

17

Jonny Sculls et al. v. Boardners, Inc.
B309933


BAKER, J., Concurring



I find it difficult in a case like this to fully square our Supreme Court's mode of analysis in *Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224 (*Delgado*) with the Court's more recent guidance that a duty analysis must be conducted at a sufficiently high level of generality. (See, e.g., *Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 221; *Vasilenko v. Grace Family Church* (2017) 3 Cal.5th 1077, 1084 ["Breach, injury, and causation must be demonstrated on the basis of facts adduced at trial, and a jury's determination of each must take into account the particular context in which any act or injury occurred. Analysis of duty occurs at a higher level of generality"]; *Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 774.) But today's opinion for the court faithfully applies *Delgado* on notably similar facts, and I have signed the opinion for that reason.


BAKER, J.