Filed 1/11/24  Xiao v. Americana at Brand CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| YUAN XIAO,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br> AMERICANA AT BRAND LLC et al.,<br><br>    Defendants and Respondents. | B322567<br><br>(Los Angeles County Super. Ct. No. 21STCV10468) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael E. Whitaker, Judge.  Affirmed.

State Law Firm, Arnold W. Gross, and Eddie Tehrani for Plaintiff and Appellant.

Kabat Chapman & Ozmer and Theresa A. Kristovich for Defendants and Respondents.

Plaintiff Yuan Xiao (plaintiff) was injured when he was struck by a person who jumped to his death from atop a parking structure at a shopping center operated by defendants The Americana at Brand, LLC, Caruso Affiliated Holdings, LLC, and Caruso Property Management, LLC (defendants). Plaintiff sued defendants for premises liability and the trial court granted summary judgment for defendants, finding they had no duty to plaintiff because (among other things) the incident was not foreseeable. Strictly speaking, the duty question is not before us. Instead, we are asked to decide a related but narrow evidentiary question: was the trial court correct to admit evidence that a search of records revealed there had been no prior similar incident on the premises?

## I. BACKGROUND

### A.     *The Complaint*

The facts surrounding plaintiff's injury are not in dispute. Plaintiff was visiting defendants' shopping center, The Americana at Brand (the Americana), when a young man committed suicide by jumping from the seventh floor of a parking structure. The young man struck and injured plaintiff before making contact with the ground.

Plaintiff asserted a single cause of action for premises liability against all defendants, alleging they "knew or should have known that parking lot structures are frequently used by persons intent on committing suicide by jumping" and breached their duty of care to plaintiff by, among other things, failing to install protective barriers, surveillance cameras actively monitored by security personnel, landscaping to block an open landing area, and signage promoting crisis intervention services.

2

### B. *Defendants' Motion for Summary Judgment*

Defendants moved for summary judgment and argued they owed plaintiff no duty of care, nor did they breach any such duty if one were assumed to exist.

On the issue of the existence of a duty, defendants argued plaintiff's injury was not foreseeable and emphasized there had been no prior suicide attempts at the Americana. In support of the argument, defendants submitted a declaration by Manuk Michael Pashanyan (Pashanyan). Pashanyan, whose title is "[s]ecurity [d]irector," works for a third-party security company and has overseen security operations at the Americana since the shopping center opened in 2008. Among other things, Pashanyan "oversee[s] . . . the preparation of '[i]ncident [r]eports' for each and every incident at the property . . . including slip and fall events, patron complaints, patron altercations, thefts, and the like." He averred that he "directed a search of all [i]ncident [r]eports for [the Americana] and determined that there were no suicides and no one jumped from the parking structure" before plaintiff was injured.

With respect to breach of a duty, defendants argued the design and construction of the parking structure satisfied all applicable code requirements. Defendants submitted a declaration by Mark E. Rieser II (Rieser), a civil engineer who stated he measured protective railings on the seventh floor of the parking structure and found them to meet or exceed California and International Building Code requirements. Defendants also submitted a declaration by their Chief Design Officer, David Williams (Williams), who stated the parking structure had been built according to plans approved by the City of Glendale.

3

Williams also explained that although "decorative grating" was installed over certain openings on the seventh floor, the sole purpose of the grating was to screen the view of equipment on a nearby roof. No grating was installed at other openings "because [the openings] provided necessary ventilation" and enhanced the Americana's "open air and aesthetic design."

### C.    Plaintiff's Opposition

Plaintiff argued Pashanyan's declaration was not admissible to show no prior similar incidents had occurred at the Americana and there was no evidence regarding the cost of implementing additional safety measures. Among other things, plaintiff objected to Pashanyan's statement concerning the lack of prior similar incidents because his report on the result of a search he "directed" was not based on personal knowledge and there was no foundational showing that the incident reports are business records. Plaintiff submitted no evidence with his opposition and complained only that he had "not concluded [his] discovery" on the issue of prior similar incidents (he did not ask to continue the summary judgment hearing, however).

As to defendants' alternative argument concerning breach, plaintiff contended evidence of compliance with applicable building codes is not dispositive as to whether defendants acted with due care. Plaintiff also raised various objections to Williams and Rieser's declarations.

### D.    Trial Court Ruling

The trial court granted defendants' motion, finding that "[d]efendants owed no duty of care to [p]laintiff and even if such duty of care is owed to [p]laintiff, [d]efendants did not breach said

4

duty of care . . . ."  Regarding the existence of a duty, the trial court determined "[d]efendants' evidence demonstrates that no similar incidents had previously occurred, and thus, does not indicate it was reasonably foreseeable that a person may jump from the parking structure in order to commit suicide."  The trial court overruled plaintiff's objection to Pashanyan's statements concerning the lack of prior similar incidents at the Americana.  With respect to breach of a duty, the trial court determined "[d]efendants' evidence demonstrates [d]efendants complied with the applicable standard of care by adhering to, and in some measures exceeding, the applicable code requirements in the construction of the shopping center and parking structure."

## II.  DISCUSSION

Whether defendants had a duty to protect patrons from persons jumping from buildings on their property is a function of the foreseeability of such an event and the burden of implementing preventative measures.  (See, e.g., *Vasilenko v. Grace Family Church* (2017) 3 Cal.5th 1077, 1085.)  In the premises liability context, foreseeability largely depends on whether there have been prior similar incidents on the premises, and plaintiff contends the trial court erred in concluding Pashanyan's statements concerning the absence of relevant incident reports were admissible to establish there had been no prior similar incidents.[1]  As we shall explain, the trial court did not err in overruling the objection to Pashanyan's declaration

---

[1]     Plaintiff does not dispute that if the lack of any prior similar incidents at the Americana was properly established, that precludes finding defendants liable.

5

because the rules of evidence do not bar Pashanyan's statement that there were no incident reports reflecting a prior similar occurrence and the absence of any such report is a trustworthy indication that there was no prior similar incident.

### A.     Background Legal Principles
#### 1.     Evidentiary rules on summary judgment

A defendant moving for summary judgment must show either "that one or more elements of the cause of action . . . cannot be established[ ] or that there is a complete defense to the cause of action."  (Code Civ. Proc., § 437c, subd. (p)(2).)  The defendant need not "conclusively negate" any element of a cause of action, but must "present evidence, and not simply point out that the plaintiff does not possess, and cannot reasonably obtain, needed evidence."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853-854, footnote omitted.)  Declarations filed in support of a motion for summary judgment "shall be made by a person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated . . . ."  (Code Civ. Proc., § 437c, subd. (d).)  Though the standard of review for evidentiary rulings in connection with summary judgment has not been definitively settled (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535), the weight of appellate authority favors review for abuse of discretion (*LAOSC Asbestos Cases* (2023) 87 Cal.App.5th 939, 946; *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 852) and that is the standard plaintiff agrees we should apply.

## 2. *Duty of care in the context of premises liability*

"The elements of a negligence claim and a premises liability claim are the same: a legal duty of care, breach of that duty, and proximate cause resulting in injury. [Citations.] Premises liability "'is grounded in the possession of the premises and the attendant right to control and manage the premises'"; accordingly, "'mere possession with its attendant right to control conditions on the premises is a sufficient basis for the imposition of an affirmative duty to act.'" [Citations.] But the duty arising from possession and control of property is adherence to the same standard of care that applies in negligence cases. [Citations.]" (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158.)

Exceptions to Civil Code section 1714's general duty of care must be "'clearly supported by public policy.'" (*Hoffmann v. Young* (2022) 13 Cal.5th 1257, 1267, quoting *Rowland v. Christian* (1968) 69 Cal.2d 108, 112; accord *Kesner*, *supra*, 1 Cal.5th at 1143 ["The conclusion that a defendant did not have a duty constitutes a determination by the court that public policy concerns outweigh, for a particular category of cases, the broad principle enacted by the Legislature that one's failure to exercise ordinary care incurs liability for all the harms that result"].) Because a duty analysis is driven primarily by policy considerations, it must "occur[ ] at a higher level of generality" than analysis of other elements of a negligence claim. (*Kesner*, *supra*, at 1144; accord, *Kuciemba v. Victory Woodworks, Inc.* (2023) 14 Cal.5th 993, 1021.)

Although, as a general matter, there is no duty to protect a would-be plaintiff from injuries caused by a third party, such a duty has been found to exist when "there exists a special relationship between the parties or some other set of

7

circumstances giving rise to an affirmative duty to protect." (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 209.)  Here, defendants do not dispute that a special relationship exists between "business proprietors such as shopping centers . . . and their . . . patrons[ ] or invitees" (*Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 235) such that the general no-duty-to-protect rule does not apply.

But "even when a special relationship [does] give[ ] rise to an affirmative duty to protect, a court must still consider whether the policy considerations set out in *Rowland* warrant a departure from that duty in the relevant category of cases." (*Brown, supra*, 11 Cal.5th at 222.)  These considerations include "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.  [Citations.]" (*Rowland, supra*, 69 Cal.2d at 113.)

"The *Rowland* factors fall into two categories.  Three factors—foreseeability, certainty, and the connection between the plaintiff and the defendant—address the foreseeability of the relevant injury, while the other four—moral blame, preventing future harm, burden, and availability of insurance—take into account public policy concerns that might support excluding certain kinds of plaintiffs or injuries from relief." (*Kesner, supra*, 1 Cal.5th at 1145.)  Between these two categories, the foreseeability factors are the "most important . . . in determining

8

whether to create an exception to the general duty to exercise ordinary care . . . ."  (*Kuciemba, supra*, 14 Cal.5th at 1022.)

> B.    *The Trial Court Did Not Abuse Its Discretion in Admitting Pashanyan's Statement Concerning the Lack of Prior Similar Incidents*

As the foregoing discussion of the governing legal framework indicates—and as plaintiff has framed his challenge to the trial court's summary judgment ruling—the duty analysis turns on the admissibility of Pashanyan's statement concerning prior similar incidents.  As relevant for our purposes, defendants contend the absence of any similar incident report was sufficient to satisfy its initial burden as a summary judgment movant.

Evidence Code section 1272 provides that "[e]vidence of the absence from the records of a business of a record of an asserted act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the nonoccurrence of the act or event, or the nonexistence of the condition, if: [¶] (a) It was the regular course of that business to make records of all such acts, conditions, or events at or near the time of the act, condition, or event and to preserve them; and [¶] (b) The sources of information and method and time of preparation of the records of that business were such that the absence of a record of an act, condition, or event is a trustworthy indication that the act or event did not occur or the condition did not exist."[2]

Here, Pashanyan explained he oversees the preparation of incident reports in the regular course of business for even minor

---

[2]    Undesignated statutory references that follow are to the Evidence Code.

9

injuries, indicating a report would certainly have been generated for a suicide or attempted suicide. Pashanyan's direction of a search of "all" incident reports is fairly read to indicate they are preserved indefinitely.[3] Further, the comprehensiveness of the records and the Americana's interest in collecting contact information for witnesses suggest the sources of information and method and time of preparation are such that the absence of a report concerning a suicide or attempted suicide is a trustworthy indication there were no prior incidents of this type. There is also no foundational concern with Pashanyan's statement because his declaration states *he* determined there was no prior similar incident after directing a search of all incident reports.

Plaintiff, however, argues the trial court's admission of Pashanyan's statement regarding the absence of business records under section 1272 was an abuse of discretion because this ruling conflicts with the trial court's exclusion of an incident report concerning plaintiff's injury. Even if we accept plaintiff's premise that such a conflict necessarily means the trial court abused its discretion in admitting Pashanyan's statements—rather than vice versa—the purported conflict is still illusory.

---

[3] Pashanyan's use of the word "all" notably parallels the use of the term in section 1272 ("It was the regular course of that business to make records of all such acts . . . ."). In addition, even if one might doubt that every single incident report generated is preserved indefinitely no matter how minor the incident, we are concerned here with only similar incident reports—i.e., reports documenting a suicide or suicide attempt—and there is good reason to believe any of *those* such reports, if they existed, would be indefinitely preserved in the manner implied by Pashanyan's "all" reference.

10

Section 1271 provides that "[e]vidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if: [¶] (a) The writing was made in the regular course of a business; [¶] (b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

Plaintiff reads section 1271 to imply the inadmissibility of a single record means the absence of a related record is not admissible under section 1272. But this is not the case. It may happen, for example, that a particular record is not admissible under section 1271, subdivision (d) because it documents information from *both* trustworthy and untrustworthy sources, yet the absence of a similar record is admissible because trustworthy sources are silent.[4] In other words, a business record may be inadmissible because it includes too much information, but the *absence* of a business record does not present this problem.

We therefore hold the trial court acted within its discretion when admitting and subsequently relying on evidence that no prior similar incidents occurred at the Americana. That resolves our task in this appeal.

---

[4] Here, for example, the incident report concerning plaintiff's injury includes statements from unidentified witnesses.

11

DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, Acting P. J.

We concur:


MOOR, J.


KIM, J.